1   David Alan Makman (SBN178195)
   Makman & Matz LLP
2   655 Mariners' Island Blvd. Suite 306
   San Mateo, CA 94404
3

  Attorneys for Subpoenaed Non-Party
4   Fujikura Ltd.

5

6

7

8             UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11   FUJIKURA LTD.

        **CV 15 80110 MISC.** HRL

12        Moving Party,     CASE NO:

               **FUJIKURA LTD'S MOTION TO**
13      v.             **QUASH NON-PARTY SUBPOENAS**

14   FINISAR CORPORATION,

               **Hearing Date:** _____
15        Responding Party.   **Time:** _____

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    *MOTION TO QUASH*

Filed
APR 07 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1
2

## Table of Contents

3   I. INTRODUCTION ....................................................................1

4
5   II. BACKGROUND FACTS ........................................................1

6
    III. ARGUMENT...........................................................................5
7

8       A. The Subpoenas Were Not Properly Served   ..............................6

9
10         1.    Finisar Did Not Provide Proper Notice of the Subpoenas ..............6

11
12         2.    Finisar Did Not Tender Fees and Did Not Deliver to Fujikura ........7

13      B.    Finisar Is Demanding Compliance More Than 100 Miles from the
              Location of the Documents and Witnesses ...............................9

14
15      C.    Finisar Is Trying to Circumvent Japanese Law and International
              Treaty ......................................................................12

16      D.    The Subpoenas Are Unduly Burdensome ...............................13

17         1.    Finisar Has Used Overly Broad Definitions That Increase Burden ..13

18
19         2.    Finisar Is Targeting Privileged Materials  ...............................14

20         3.    Finisar Is Using the Subpoenas to get Party Discovery  ..............15

21         4.    Finisar Failed to Take Reasonable Steps to Reduce Burden  ........16

22      IV. CONCLUSION  ............................................................... 18
23
24
25
26
27
28

**Table of Authorities**

Cases

| | |
|---|---|
| *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) | 14, 16 |
| *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 2006 WL 1311967 (S.D.N.Y. May 12, 2006) | 8 |
| *Brinkley v. Houk*, 2008 WL 4560777 (N.D. Oh. 2008) | 10 |
| *Campbell v. Hubbard*, 2007 WL 174097 (D.Ariz.,2007) | 10 |
| *Carillo v. B&J Andrews Enterprises, LLC.* 2013 WL 310365, *2 (Jan. 24, 2013) | 6 |
| *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 624 (5th Cir. 1973) | 13 |
| *Dolezal v. Fritch*, 2009 WL 76452 (D.AZ. March 24, 2009). | 10 |
| *Dhillon v. Does 1-10*, 2013 WL 5367783 (N.D.Cal., Sept. 25, 2013) | 10 |
| *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). | 13 |
| *In re Jee*, 104 B.R. 289 (C.D. Cal. 1989) | 13 |
| *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178 (9th Cir. 2013) | 20 |
| *M'Baye v. New Jersey Sports Production, Inc.*, 246 F.R.D. 205, 207 (S.D.N.Y. 2007). | 10 |
| *McAuslin v. Grinnell Corp.*, 1999 WL 246178 *3 (E.D.LA 1999) | 10 |
| *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (PC.D. Cal. 2005) | 14 |
| *Nissan Fire & Marine Insurance Co. Ltd. v. Fortress Re, Inc.*, 2002 WL 1870084 *5 (S.D.N.Y. Aug. 14, 2002). | 12 |
| *Wahoo Intern., Inc. v. Phix Doctor, Inc.*, 2014 WL 3573400 (S.D. Cal. 2014) | 6 |
| *Wallis v. Centennial Ins. Co.*, 2013 WL 434441, *4 (E.D. Cal. 2013) | 7 |
| *Wultz v. Bank of China Ltd.*, 293 F.R.D. 677 (S.D.N.Y. 2013) | 10 |

**Statutes**

| | |
|---|---:|
| F.R.Civ.P. 4(h) | 8,9 |
| F.R.Civ. P. 45 | 3, 4, 8 |
| .Civ.P. 45(c)(1)(A), 45(c)(2)(A) | 9 |
| F.R.Civ.P. 45(d)(1) | 5, 13, 16, 18, 19 |
| F.R. Civ. P. 37(a)(5) | 19 |

MOTION TO QUASH

## I.  INTRODUCTION

Fujikura Ltd. ("Fujikura Ltd.") is a Japanese company that appears here asking the Court's relief from two subpoenas, both issued by Finisar Corporation ("Finisar") pursuant to an action pending in the Northern District of California styled *Finisar Corporation v. Nistica Inc.* case No. 5:13-cv-03345-BLF.  Fujikura objects that the subpoenas were not properly served because Finisar did not comply with the international treaty between the US and Japan that governs requests from the United States to take discovery in Japan in support of U.S. litigation but, instead.  Finisar is seeking to avoid its obligations set forth by law and to deny Fujikura Ltd. the legal protections that it is entitled to under international treaty.  Fujikura objects to the subpoenas as overly broad, unduly burdensome and intended to harass.

Since the subpoenas were not properly served, and since there is no basis for Finisar to compel compliance more than 100 miles from the place where the discovery is located, and, further, there being no basis for Finisar to ignore international treaty, the subpoenas are improper and unsupportable.  They also appear to be intended to harass   Fujikura Ltd. therefore moves to quash and requests its costs and attorney fees in relief.

Fujikura Ltd. appears solely to quash the subpoenas and does not agree that the subpoenas were properly served or that jurisdiction over non-party Fujikura Ltd. in California has been properly established.

## II.  BACKGROUND FACTS

In July of 2013, Finisar sued a company called Nistica Inc. ("Nistica") in the Northern District of California.  The action was assigned Case No. 5:13-cv-03345-BLF.  Discovery is almost complete in that action.

1   The circumstances that led to this motion arose out of the deposition of Mr. Taichi

2   Yamaguchi, a Nistica witness who previously worked at Fujikura Ltd. in Japan and participated

3   in Fujikura Ltd.'s acquisition of Nistica.  Yamaguchi now works at Nistica, is on the board of

4   Nistica and resides in New Jersey, where Nistica is located.  His deposition took place on March

5   5 and March 6, 2015 in San Francisco.  He is a native Japanese speaker, so the deposition was

6   taken in Japanese with interpreters.  By agreement of the parties, the deposition was scheduled

7   for two days instead of the normal single day deposition permitted under the Federal Rules in

8   order to permit time for interpretation.

9

10

11   Fujikura Ltd. is informed and believes that, during the discovery period, counsel for Nistica

12   learned that it had inadvertently produced some privileged and/or documents that were Fujikura

13   documents and not Nistica documents. (Makman Decl. at ¶ 4.)  Apparently, Nistica was able to

14   claw those documents back. (*Id.*)  Counsel for Nistica, realizing that privilege issues might arise

15   during the deposition, and that there was a potential conflict of interest (*i.e.*, that Nistica counsel

16   should not be making decisions regarding Fujikura Ltd.'s privileged and/or confidential

17   information), arranged to have separate counsel appear at the deposition to advise Mr.

18   Yamaguchi on any privilege issues that might arise.  The undersigned, David Alan Makman, of

19   Makman & Matz LLP, was retained to avoid conflict of interest for the purpose of protecting

20   Fujikura Ltd.'s privilege and protecting Fujikura Ltd's rights during the deposition given that

21   Fujikura Ltd.'s confidential information had been produced in discovery.  (Makman Decl. ¶¶ 4-

22   5.)  Makman had no previous relationship with Fujikura Ltd. and the representation was to

23   terminate after completion of the deposition.  (Makman Decl. ¶ 4.)

24

25

26   On the second day of deposition, Counsel for Finisar handed Makman two subpoenas

27   directed to Fujikura Ltd.  (Makman Decl. ¶ 6, Exhibits A & B.)  Makman objected that he is not

28

-2-                                    MOTION TO QUASH

1   authorized to accept service of process on behalf of Fujikura Ltd. and that he was not accepting

2   service on Fujikura Ltd.'s behalf and he requested that the subpoenas be withdrawn as they are

3   in violation of federal and international law. (*Id.*)

4

5       Fujikura Ltd. owns shares in Nistica and does business with Nistica but is not a party to this

6   action and is not accused of patent infringement.  The United States patent laws are bounded by

7   the territorial limitations of the United States, and Fujikura Ltd. does nothing in the United

8   States that Finisar can claim infringes its patents.  It is defendant Nistica that imports the

9   accused devices in the United States and, therefore, has the obligation to comply with 35 U.S.C.

10  § 271(a), a statute that, on its face, applies only to acts within the United States and has no

11  extraterritorial reach.  Because Fujikura Ltd. does not "make, use, sell, or offer for sale" any of

12  the accused devices in the United States, and because it is not the importer of the accused

13  devices, Fujikura Ltd. has not been accused of patent infringement and is not a party and

14  Fujikura Ltd.'s business is outside the jurisdictional reach of Finisar's lawsuit against Nistica.

15

16

17      Importantly, F.R.Civ. P. 45 applies requires service by delivery "in person."  Fujikura Ltd.

18  is a corporation that exists as a juridical person only in Japan.  Fujikura Ltd. does not do

19  business in person in California.  Rather, Fujikura Ltd. has established a subsidiary, Fujikura

20  America, Inc., a Delaware Corporation that has an office in Santa Clara.  Fujikura America, Inc.

21  is a separate company from Fujikura Ltd. and it is not involved in the business at issue in the

22  lawsuit between Finisar and Nistica.  Fujikura Ltd. respectfully submits that it is entitled to the

23  legal benefits of having a subsidiary as opposed to a branch office.  Because the subsidiary is a

24  separate entity, its presence in California should not expose Fujikura Ltd., the Japanese parent

25  company, to the private subpoena power of litigants in California.  The California subsidiary is

26  not involved in the Nistica business (Ogawa Decl. at ¶¶ 10-12), and does not, in the ordinary

27

28

MOTION TO QUASH

1    course of business have access to the documents and things at issue in the document subpoena.

2    (*Id.*) Nor are there witnesses at the subsidiary who have knowledge of the topics raised in the

3    deposition subpoena.  (*Id.*)  As such, there is no basis for demanding compliance through the

4    U.S. subsidiary or in using the subsidiary to avoid the 100 mile limitation of F.R. Civ. P. 45.

5

6         Because the U.S. subsidiary is not involved in the relevant business, any responsive

7    documents are located more than 100 miles from here—in Japan or Viet Nam.  (Ogawa Decl. at

8    ¶¶ 10-12.)  As such, they are beyond the range of the subpoena power of F.R.Civ. P. 45.  Finisar,

9    as a private litigant in US court, is required to use letters rogatory to take discovery from non-

10   parties of documents and things located outside the United States.  (See Makman Decl. Ex. E,

11   department of state web site printout.)  There is no legal basis for using F.R.Civ. P. 45 to

12   circumvent the normal process here.  Further, it is contrary to international treaty for a private

13   litigant to compel deposition testimony from witnesses that are located in Japan against their

14   will.  By law deposition testimony of witnesses located in Japan must be ***voluntary*** and at a US

15   embassy or consulate in Japan.  (Makman Decl. Ex. E, excerpts from U.S. Department of State

16   Web Site)  As such, Finisar has not taken the appropriate steps to obtain the requested discovery.

17

18   Moreover, this litigation has been pending for years, and Finisar could have prepared letters

19   rogatory in compliance with international law at any time, but chose not to do so.

20

21        The subpoenas are also burdensome.  The document subpoena includes 40 production

22   requests—documents and things all to be produced within three weeks. (Makman Decl. Ex. A.)

23   The requests are broad and were not carefully crafted to avoid burden—instead, they are the

24   kind of requests one might see served on a party defendant at the **outset** of discovery in a patent

25   litigation.  They are not the sort of requests one expects to see after years of discovery have been

26   completed.  The requests are improper because they are not narrowly tailored to obtain specific

27

28

        MOTION TO QUASH

1   information that Finisar actually needs, but, instead, have been drafted using broad and general

2   language that is likely to sweep in all sorts of documents and things that would be burdensome

3   to gather and are of little or no actual use to Finisar in the context of proving its case.

4

5       The subpoenas also purportedly require Fujikura Ltd. to prepare witnesses on 44 topics—

6   which is more than can be reasonably handled in a single day of deposition.  The deposition was

7   to take place 28 days after the subpoenas were served, but Fujikura Ltd. was to produce any

8   documents that were used to prepare those witnesses within 21 days.  The 44 topics are so broad

9   that, to comply, Fujikura Ltd. would have to prepare several different witnesses, and, since all

10  44 topics could not be covered within a single day of depositions, Finisar has imposed the

11  burden on Fujikura Ltd. of preparing witnesses to testify on many topics that either will not be

12

13  part of the deposition or will be investigated at only a superficial level.

14

15  **III.    ARGUMENT**

16

17      The subpoenas should be quashed as improper because (1) they were not properly served,

18  (2) the place of compliance is more than 100 miles from the location that the documents and

19  witnesses are located (3) there is no international treaty that authorizes Finisar, a private litigant,

20  to compel production of third party discovery directly from Japan without involving the United

21  States Department of State, as well as the Japanese Ministry of Foreign Affairs and Ministry of

22  Justice and (4) the requests in the subpoenas are overly broad and unduly burdensome.  In

23  addition, pursuant to FRCP 45(d)(1) this Court should impose an appropriate sanction which

24  should include the costs and attorney fees associated with objecting and moving to quash.

25

26

27

28

MOTION TO QUASH

**A.      The Subpoenas Were Not Properly Served**

    **1.      Finisar Did Not Provide Proper Notice of the Subpoenas**

FRCP 45(a)(4) requires:

> If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

Plaintiff Finisar did not provide advanced warning of the document subpoena to defendant Nistica, but, instead, chose to surprise counsel at the deposition—concurrently handing the subpoena to Counsel for Fujikura Ltd. and for Nistica. (Makman Decl. at ¶ 5.)  As such, Nistica was not provided reasonable advanced notice of the subpoena and the document subpoena is invalid in light of FRCP 45(a)(4).

This language was added to the Rule 45 in 2007 and, at the time, the advisory committee explained that "Courts have … tended to converge on an interpretation that *requires notice to the parties before the subpoena is served on the person* commanded to produce or permit inspection.  That interpretation is adopted in amended Rule 45(b)(1) to give clear notice of general present practice."  Committee Notes on Rules—2007 Amendment (emphasis added).

The remedy for failure to provide reasonable prior notice is to strike the subpoena.  See *Carillo v. B&J Andrews Enterprises, LLC.* 2013 WL 310365, *2 (Jan. 24, 2013)("Due to the failure to provide adequate notice before service of the subpoenas, the Court must strike the subpoenas.")  Note, however, there is dicta contrary to the 2007 Amendment in *Wahoo Intern., Inc. v. Phix Doctor, Inc.*, 2014 WL 3573400 (S.D. Cal. 2014).  However, the *Wahoo* decision is distinguishable in that (1) the court in *Wahoo* relied on 2006 case law and did not explicitly consider the 2007 Amendment and (2) the timing issue was irrelevant to that case in that the

MOTION TO QUASH

1    subpoenas had been re-served, thereby curing the notice issue.

2

3        This issue of timing was raised during the meet and confer relating to this motion to quash.

4    Apparently, counsel for Finisar was aware of the requirement and asserts that they complied

5    with the rule by deliberately handing the notice of subpoenas to Counsel for Nistica seconds

6    before handing the subpoenas to Makman.  As of the time of this writing, Finisar has apparently

7    notified Nistica that it intends to re-serve the document subpoena and has actually sent copies of

8    the subpoenas to Fujikura America, Inc.  The 271 Page notice of those subpoenas is attached as

9    Exhibit F to the Makman Declaration.  This cures nothing.  Service of subpoenas on Fujikura

10   America that are addressed to Fujikura Ltd. is not proper—Rule 45 requires delivery to the

11   named person, not to a subsidiary.  Moreover, Finisar has not withdrawn the original subpoenas.

12

13

14       **2.       Finisar Did Not Tender Fees and Did Not Deliver to Fujikura**

15   FRCP 45(b) states the rule for service of a subpoena:

16       Serving a subpoena requires delivering a copy to the named person and, if the subpoena
         requires that person's attendance, tendering the fees for 1 day's attendance and the
17       mileage allowed by law.

18   No fees were tendered for the deposition subpoena.  As such, the deposition subpoena

19   should be quashed.  See, *e.g.*,  *Wallis v. Centennial Ins. Co.*, 2013 WL 434441, *4 (E.D. Cal.

20   2013)("In this case, plaintiffs did not tender Gary Selvin's witness fees at the time the deposition

21   subpoena was served. On this ground then the subpoena directed to Gary Selvin will be

22   quashed.")

23

24       Further, neither subpoena was served on Fujikura Ltd. "in person." Rather, both were

25   handed to the undersigned Makman, when he appeared at a deposition for the *limited* purpose of

26   making privilege objections on behalf of non-party Fujikura Ltd. As we understand it, Finisar's

27   argument on this point is that any method of service that ensures timely delivery to Fujikura is

28

                                       - 7 -                        MOTION TO QUASH

adequate. However, service on counsel appearing for a limited purpose is not a mehtod of

service that ensures delivery, timely or otherwise, to Fujikura Ltd., because such counsel is

under no obligation to accept service of the subpoena on behalf of Fujikura Ltd. In addition,

these subpoenas were not calculated to provide timely delivery. Japan is in a different time

zone, and it was already Saturday Japan time when the subpoenas were served. Moreover,

objections to the document subpoena were due within 14 days, and it took 10 days to

communicate the substance of the subpoena and to negotiate a represeniation agreement relating

to the subpoenas. This was under threat that if objections were not served within 14 days,

Fujikura Ltd. might be deemed to have waived. Moreover, no Japanese translation of the

subpoenas was provided. This increased the burden on Fujikura Ltd., which had such little time

respond to these subpoenas, which are not in the language that Fujikura Ltd. ordinarily uses to

conduct its business.

Further, the statute requires delivery "in person." Handing a subpoena to a lawyer is not

serving "in person". Rather, the language from F.R.Civ.P. 45 is narrowly construed:

> Personal service of subpoenas is required. The use of the word 'delivering' in the rule with reference to the person to be served has been construed literally. Contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness. Moreover, **unlike service of most papers after the summons and complaint, service on a person's lawyer will not suffice.**

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 2006 WL 1311967 (S.D.N.Y. May 12,

2006)(emphasis added.) Of course, *Briarpatch* dealt with service on an individual. Here, Finisar

is trying to serve a foreign corporation and is apparently relying on the service provisions of

F.R.Civ.P. 4(h)(1). That paragraph, on its face, only applies to companies that are located

within the United States and requires service upon an "an officer, a managing or general agent,

or any other agent authorized by appointment or by law to receive service of process."

MOTION TO QUASH

Fujikura Ltd. is a Japanese company and is located in Japan, so, absent a waiver (and no waiver was agreed to or event requested from Fujikura Ltd.),[1] only F.R.Civ.P. 4(h)(2) applies. As such, Finisar should have complied with the Hague Convention. Instead, Finisar is trying to circumvent the requirements of the Hague Convention by claiming that Makman (and now Fujikura America) qualifies as an "agent" for the purposes of service of process. But, Makman is not an officer of Fujikura Ltd. (Makman Decl. ¶ 5.) Nor is he a managing or general agent of Fujikura Ltd. (*Id.*) Rather, he is an attorney who was authorized to appear at a single deposition for the purpose of permitting Nistica counsel to meet its ethical obligations relating to conflict of interest. (*Id.*) Makman had no representation of Fujikura Ltd. prior to March of 2015, and has no ongoing representation of Fujikura independent of appearing at the deposition and (now) quashing these subpoenas. (*Id.*) He is not a registered agent for service of process for Fujikura and was retained solely to address the possible conflict of interest that counsel for Nistica faced at the deposition of Mr. Yamaguchi. (*Id.* at ¶ 5 -6.) His presence at the deposition is not an instance of Fujikura Ltd. "doing business" in California in person. Rather, given his limited role, service on Makman should not be deemed sufficient to circumvent either the 100 mile rule or the Hague Convention. Therefore, Fujikura Ltd. respectfully requests that this court rule that Makman's appearance at the deposition does not give Finisar valid subpoena power over Fujikura Ltd.

Moreover, on or around April 6, 2015, Finisar, presumably recognizing that service on Makman was invalid, sent new subpoenas (with the same requests for production and deposition topics) to Fujikura America, Inc.. Those subpoenas purport to be directed to Fujikura Ltd. but, of course, service on Fujikura America is not service on Fujikura Ltd. because the two companies

---

[1] Finisar is facing the close of discovery and is trying to rush this discovery. This is not appropriate. Finisar could, and should have sought this discovery years ago if it needed it.

MOTION TO QUASH

are separate legal entities.  As such, those subpoenas, too, should be quashed.

**B.      Finisar is Demanding Compliance More Than 100 Miles from the Location of the Documents and Witnesses**

Finisar has also failed to comply with F.R.Civ.P. 45(c)(1)(A) and  45(c)(2)(A), both of which limit the range of a subpoena to "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  This rule protects non-parties from being required to travel more than 100 miles to comply with a subpoena.  See *M'Baye v. New Jersey Sports Production, Inc.*,  246 F.R.D. 205, 207 (S.D.N.Y. 2007).  The rule is not limited to travel- -it also prevents parties from compelling the production of documents from a non-party beyond the 100 mile territorial limit. of Rule 45. See, *McAuslin v. Grinnell Corp.*, 1999 WL 246178 *3 (E.D.LA 1999)(Holding that where "a subpoena purports to require production from a non-party beyond the territorial limits of Rule 45" the Court is "without power to compel the production.") See also *Dolezal v. Fritch*, 2009 WL 76452 (D.AZ. March 24, 2009). *Campbell v. Hubbard*, 2007 WL 174097 (D.Ariz.,2007)("Because such production would not be within the limits provided by Rule 45(c)(3)(A)(ii), D & B has 'adequate cause for failure to obey' within the meaning of Rule 45(e). The Court therefore will deny Plaintiff's Motion to Compel."); *Dhillon v. Does 1-10*, 2013 WL 5367783 (N.D.Cal., Sept. 25, 2013)("Here, the subpoena would be served outside the Northern District of California and would direct Schroeder to produce documents in San Francisco, which is more than 100 miles from the address at which the subpoena would be served. "[N]onparties cannot be required to produce documents at a location more than 100 miles from their home or business."). See also *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 624 (5th Cir. 1973)(Concluding that a court can't order production of records from a non-partly located in a foreign judicial district.); *Wultz v. Bank of China Ltd.*, 293 F.R.D. 677 (S.D.N.Y. 2013)(Granting motion to quash for failure to comply with 100 mile limit); *Brinkley v. Houk*,

MOTION TO QUASH

1   2008 WL 4560777 (N.D. Oh. 2008) (Granting motion to quash for failure to comply with 100

2   mile limit).

3

4       Counsel for Finisar contend that they have complied with the 100 mile limitation because

5   there is a Fujikura subsidiary, Fujikura America, in Santa Clara that is involved in sales of

6   Fujikura products in the United States and, as a result Fujikura Ltd is doing business in

7   California "in person" in California.  Not so.  Fujikura Ltd. is a Japanese entity that is based in

8   Tokyo.  If we want to maintain the legal fiction that Fujikura Ltd. is a person, then it must be

9   considered a juridical person (as opposed to a natural person) that exists, resides, and regularly

10  transacts business "in person" in Japan.  Fujikura Ltd. could, of course, take the steps required to

11  become a juridical person in California and to do business here "in person" by registering with

12  

13  the Secretary of State as a foreign corporation here.  If Fujikura Ltd. had done that, it would

14  have a registered agent for service of process in California (as Fujikura America did).  But,

15  Fujikura Ltd has *not* done that.  Instead, Fujikura has a established subsidiary in the U.S.,

16  Fujikura America, Inc.  That Delaware company is not involved in the product line that is at

17  

18  issue in this lawsuit and does not have custody or control over the 40 broad categories of

19  documents at issue in the subpoenas in the ordinary course of business.  Nor are the Fujikura

20  America employees deeply familiar with the subject matter of the 44 deposition topics that

21  Finisar has served. Rather, the documents and witnesses called for by these subpoenas are

22  located in Japan—outside the range of the subpoena—and that is where the people who have

23  

24  knowledge of the Nistica business are located.  Ogawa Declaration at ¶¶ 10-12.  As such, the

25  presence of an office of subsidiary in Santa Clara provides no basis for asserting that Fujikura

26  Ltd. itself regularly transacts business within 100 miles of  the place of compliance "in person"

27  as required by F.R.Civ.P. 45.

28

MOTION TO QUASH

1   The 100 mile rule is, in part, a rule that relates to burden.  As discussed below, the

2   document requests are highly burdensome.  Given the breadth of the discovery requests,

3   Fujikura can't simply e-mail a small collection of responsive documents to the United States.

4   Rather, it could take months to negotiate narrower requests, prepare a privilege log, gather all of

5   the required documents and things, review them, confirm any details regarding the gathering and

6   production of documents, prepare a privilege log, and prepare witnesses on the 44 topics that are

7   provided in the subpoena—and that's assuming that the subpoena does not require production of

8   documents from Fujikura's subsidiary in Vietnam.  Makman Decl. ¶¶ 7-8.  Assuming that

9   Fujikura employees that are authors or recipients of the requested documents are located in

10  Japan, searching for, gathering and reviewing responsive documents would likely require

11  multiple trips back and forth—a distance of more than 100 miles from the place where Finisar is

12  demanding compliance.  (*Id.*)

13

14

15      **C.      Finisar Is Trying to Circumvent Japanese Law and International Treaty**

16

17      The deposition subpoena is also improper as a violation of Japanese law.  Japanese law only

18  authorizes a deposition in Japan for use in U.S. courts if the witness appears voluntarily, if the

19  deposition takes place on U.S. consular premises, and if a consular officer presides over the

20  deposition pursuant either to a letter rogatory or to a court order.  See *Nissan Fire & Marine*

21  *Insurance Co. Ltd. v. Fortress Re, Inc.*, 2002 WL 1870084 *5 (S.D.N.Y. Aug. 14, 2002).

22  Finisar has not cited, and we are not aware of, any case, where a non-party was ordered to send

23  witnesses *from Japan* to the United States pursuant to FRCP 45.  Nor has Finisar cited any

24  cases where a Court has compelled depositions *in Japan.*

25

26      No such case exists because Japan is not a party to the Hague Evidence Convention.

27  (Makman Decl. Ex. E, Printout from US State Department.)  Instead, depositions in Japan are

28

- 12 -                          MOTION TO QUASH

governed by Article 17(a)(e) of the Japan Consular Convention. (*Id.*) Finisar would need a Court order or commission authorizing the deposition, and the presiding U.S. Consular office would, at the outset of the deposition, confirm that the witness was appearing voluntarily. Rule 45, which grants powers to private litigants, does not authorize Finisar to compel burdensome deposition discovery from Japan in violation of Japanese law because there is no treaty authorizing Finisar to demand this evidence. If Finisar wanted this discovery, Finisar could have made Fujikura Ltd. a party by naming them as a defendant. They chose not to do so.

Finisar has also indicated that it plans to argue that Fujikura Ltd. should be treated a party to the litigation, either as an intervenor (even though Fujikura Ltd. has not filed a motion to intervene) or as having such an interest in the case that it should be treated as a party. Finisar also apparently plans to argue that Fujikura Ltd. should be ordered to prepare Fujikura America employees that are based in Santa Clara for deposition on all 44 topics of the subpoena. The case that Finisar has identified in support of these arguments is *In re Jee*, 104 B.R. 289 (C.D. Cal. 1989), which dealt with compelling discovery through a branch office that was actually served and participated in the relevant business. In contrast, here, Fujikura America, Inc. is subsidiary—a separate legal entity—that is not being served itself and that does not participate in the relevant business. Moreover, that was a suit brought by a trustee and the company that was to provide discovery stood to benefit from the lawsuit. Here, Fujikura Ltd. will not benefit from the patent suit unless the Court finds that it is frivolous and awards fees.

### D.    The Subpoenas Are Unduly Burdensome

District courts have broad discretion to determine whether a subpoena is unduly burdensome. See *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). A "court may prohibit a party from obtaining discovery from a non-party if that same

- 13 -

1   information is available from another party to the litigation." *Amini Innovation Corp. v.*

2   *McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014).

3

4       In addition:

5

6       [A]n evaluation of undue burden requires the court to weigh the burden to the
        subpoenaed party against the value of the information to the serving party," and requires
7       the court's consideration of "such factors as relevance, the need of the party for the
        documents, the breadth of the document request, the time period covered by it, the
8       particularity with which the documents are described and the burden imposed.

9   *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)(internal citation and quotation

10  marks omitted).  Further, FRCP 45(d)(1) requires the attorney drafting a subpoena to take

11  reasonable steps to avoid imposing an undue burden on the person served.  Even a cursory

12  review of the requests for production and deposition topics at issue here show that Finisar has

13  failed to comply with FRCP 45(d)(1) because the requests and topics are so numerous and

14
    overly broad.
15

16           1.       **Finisar Has Used Overly Broad Definitions That Increase Burden**

17

18       The document subpoena begins with a series of definitions that, rather than limiting the

19  scope of Fujikura Ltd.'s investigation, are so broad that they will increase the burden on

20  Fujikura.  Finisar wants to know about a wide range of products – not just the products that are

21  actually at issue in this action.  Finisar wants to know about every Fujikura entity on the planet,

22
    not just Fujikura Ltd.  Finisar wants to know about every Fujikura product or component that is
23
    sold worldwide, even if the product is never made, used, sold, offered for sale, or imported into
24
25  the United States.  Finisar wants to know about prototypes and samples, and anything that might

26  be relevant that Fujikura Ltd. has provided to anyone anywhere in the world.  The definitions

27  found at the beginning of the subpoenas demonstrate the breadth of Finisar's demands:

28

MOTION TO QUASH

- The definition of "Fujikura" is so broad, that, if followed literally, the subpoena would require Fujikura to search more than 25 locations worldwide. See Definition No. 3. Makman Decl. ¶ 7.

- The subpoena purports not to be limited to any specific Nistica Accused Devices—though it identifies some product numbers, it is broadly drafted to require production of any devices that "include LC-based, LCOS-based or MEMS based technology for optical switching." See Definition No. 15.

- Finisar is asking Fujikura to identify any "product, device component or service" that is "at any point, used in, contained in, incorporated in, shares a specification with, uses the same components as or otherwise relates to a Nistica Accused Device." See Definition No. 16.

- In addition, the subpoena purports to require Fujikura to identify "Relevant Fujikura Devices," a term that is again broadly defined to refer to any devices that "include LC-based, LCOS-based or MEMS based technology for optical switching" and also purportedly includes those that "are substantially similar to" or "otherwise related to" the Nistica Accused Devices, "wherever the Relevant Fujikura Device is made, used, sold, exported, or imported." Definition No. 17.

Makman Decl. Ex. A.

2. **Finisar is Targeting Privileged Materials**

Finisar has served several requests that are aimed at targeting privileged materials (and that would force Fujikura Ltd. to create a privilege log) and call for information that has only marginal relevance to the action. For example:

- Finisar wants all documents relating to the Present Litigation. Request 1.

- Finisar wants all documents relating to its patents. Request 2.

- Finisar wants all documents relating to IP due diligence. Request 3.

- Finisar wants to know about any patent disputes, licenses, settlement agreements or covenants not to sue that relates to any Nistica Accused Device or any Relevant Fujikura Device. Request No. 11.

- Finisar wants to know about all licenses or offers to license any patents that are either "comparable" to the six patents in suit, or relate to WSS technology or ROADM linecard or transceiver technology. Request Nos. 12 and 13.

Makman Decl. Ex. A.

- 15 -

MOTION TO QUASH

It is hard to believe that the information called for by these requests is genuinely necessary to Finisar's case while the burden of searching for it, reviewing any Japanese language documents, and preparing a privilege log is far greater than any value that this information could possibly have towards actually resolving the dispute between Nistica and Finisar.

**3.      Finisar Is Using the Subpoenas to Get Party Discovery**

As stated above, a "court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014). The following requests call for information that should be discovered directly from Defendant Nistica or, in the case of Request No. 35, from Finisar's own files:

- Request 14. All documents, communications, and things related to Your knowledge of Nistica's intention to develop, market, or sell transceivers.

- Request 18. All communications between You and Nistica that relate to any Relevant Fujikura Component.

- Request 19. All documents, communications, and things relating to the sale, offer for sale or other provisioning of a Relevant Fujikura Component to Nistica.

- Request 20. All documents, communications, and things constituting or relating to Nistica's decision to purchase any Relevant Fujikura Component or Relevant Fujikura Device from You, or Nistica's decision to use or incorporate a Relevant Fujikura Component in a Nistica Accused Device or Relevant Fujikura Device.

- Request 25. All documents, communications, and things constituting or relating to any agreement by, or obligation of Fujikura, NEL, or NTT to indemnify Nistica with respect to liability for patent infringement.

- Request 29. All documents referring or relating to any offer to license, assign, buy, or sell any interest in any WSS, ROADM linecard, or transceiver technology, including without limitation offers to Nistica.

- 16 -                                    MOTION TO QUASH

- Request 35. All communications, including emails, with Finisar.

Makman Decl. Ex. A.

### 4.    Finisar Failed to Take Reasonable Steps to Reduce Burden

F.R.Civ.P. 45(d)(1) requires the attorney that issues a subpoena to "take reasonable steps to avoid undue burden or expense." Finisar did not do so. Examples of steps that Finisar could have taken to lower the burden:

*Finisar could have complied with international law.* This case has been pending for several years. Throughout that time Finisar has been aware of Fujikura Ltd. and its involvement in overseas manufacturing—an act that does *not* give rise to liability for patent infringement in the United States. Finisar had until December of 2014 to add Fujikura Ltd as a party to this case and could have served this discovery by letter rogatory in order to obtain the discovery before the deadline for amending pleadings. Finisar would have done that if Finisar genuinely thought that Fujikura Ltd. was essential to its case. Letters rogatory would be in compliance with international law. Under that procedure, Finisar would have to provide its subpoenas, including any statutory language and any exhibits, translated into Japanese language--translation is another reasonable step that Finisar could have taken to reduce burden to Fujikura Ltd.—and, using letters rogatory would also have been courteous to the Japanese government, which, having negotiated a treaty that prohibits private litigants from demanding involuntary discovery out of Japan as Finisar seeks to do here, is entitled to be informed whenever private litigants in the United States actually need to take discovery from Japan.

*Finisar could have limited the subpoenas in terms of time and space.* No time period is set for these requests—meaning that the requests ask for broad categories of information from the beginning of time to the date of the subpoena and even beyond that date (in that the final

MOTION TO QUASH

request asks for production of documents used to prepare for depositions that are scheduled after the document production is due).  Determining the relevant time period, and limiting the requests to that time period would, for example, have provided a bright line so that Fujikura Ltd. could quickly identify files that, due to their date, need not be searched.  Further, the production is due within three weeks of the date that Fujikura Ltd. received notice of the subpoena.

Similarly, the requests are not limited spatially.  For example, they ask for discovery "wherever the Relevant Fujikura Device is made, used, sold, exported or imported."  Further, Finisar drafted definitions that seem to target *all* Fujikura entities worldwide, when Finisar could easily have picked just one Fujikura entity and set compliance within 100 miles of that entity.

*Finisar could have limited its discovery requests to the products that are at issue in this suit.*  This lawsuit is several years old and discovery is about to close.  Surely Finisar knows which products will be at issue at trial by now.  That being the case, it would have been reasonable to draft requests that target only the products that will be at issue at trial here.  Instead, Finisar has drafted broad catch-all definitions and is even asking for discovery about a broad and vaguely defined range of components.

*Finisar could have attempted to draft requests that don't implicate the privilege.*  The requests that call for privileged information have little to do with the substance of the patent case.  They won't prove how the products at issue in this lawsuit operate, they won't prove or disprove validity of the patent, they won't prove reasonable royalty damages because the reasonable royalty is determined by a hypothetical negotiation between Nistica and Finisar as of a certain date, foreign patent licenses are not particularly relevant to the reasonable rates a United States Patent, and they don't relate to Finisar's claims for willful infringement because that issue is to be resolved by examining Nistica's state of mind at a specific time.

MOTION TO QUASH

*Finisar could have served fewer document requests and tailored them to information that is essential to its case.*  Because the requests are so broad and because there are so many requests, these subpoenas are plainly unreasonable.  At this late stage of discovery, Finisar should have enough evidence to try its case and should not be embarking on a quest for new evidence and new products to accuse.  By way of example, Document Request No. 3 calls for "All documents, communications, and things relating to any Nistica Accused Device or Relevant Fujikura Device."  This request is not limited to any time period.  Moreover, the terms Nistica Accused Device and Relevant Fujikura Device" are open ended.  In addition, the term "relating to" is broadly defined, and Instruction No. 2 expands this request to any document that responds "in part" to this request.  Moreover, the request is not limited to technical documents, but might include development documents, marketing, sales, manufacturing, shipping and numerous other kinds of documents that are kept in the ordinary course of business.  At this late stage of discovery, discovery should be directed to specific limited aspects of development, marketing, sales or manufacturing as appropriate.  Fujikura Ltd. should not be asked to turn the company upside-down looking for all documents that might possibly be "relevant" "in part" to any accused products and/or their components.  Given the sweeping breadth of the requests in these subpoenas, Fujikura Ltd. contends that counsel has failed to take reasonable steps to prevent burden as required by F.R.Civ.P. 45(d)(1).

*Finisar could have served fewer topics for deposition.*  There are 44 topics for deposition.  The topics are broad and open ended.  This is more information than can be covered in a single day of deposition, and it is more than any single witness can be prepared to testify about competently.  It would be far less burdensome to respond to a small number of focused requests.  And, at this late stage of discovery, Finisar should know exactly what additional information it wants and needs and should not be fishing for new theories of the case by subpoena.

- 19 -

MOTION TO QUASH

Fujikura Ltd. would like its costs and attorney fees in connection with this motion as they have no legitimate basis—they were not properly served, they call for information that is not located within 100 miles of the place for compliance, they are precluded by the treaty between America and Japan, and they are unduly burdensome and unfocused.  Moreover, Finisar could have sought discovery from Fujikura by proper means (*i.e.*, letters rogatory) at any time over the last two years.  Fujikura should not be burdened with it on a rushed basis at this late date.

F.R.Civ.P. 45(d)(1) authorizes the Court to award sanctions if it feels that these subpoenas are in bad faith, for an improper purpose, or in a manner inconsistent with existing law. *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178 (9th Cir. 2013).  Attorney fees could also be awarded pursuant to F.R. Civ. P. 37(a)(5).

IV.    CONCLUSION

For the above reasons Fujikura Ltd.'s Motion to Quash should be GRANTED.

Dated: April 7, 2015

By: _____
David Alan Makman
Makman & Matz LLP
Counsel for Fujikura Ltd.

MOTION TO QUASH