CHRISTOPHER J. COX (BAR NO. 151650)
Email: chris.cox@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3029
Facsimile: (650) 802-3100

DAVID C. RADULESCU (*Of Counsel*)
Email: david@radulescullp.com
TIGRAN VARDANIAN (*Of Counsel*)
Email: tigran@radulescullp.com
ROBIN M. DAVIS (*Of Counsel*)
Email: robin@radulescullp.com
RADULESCU LLP
The Empire State Building
350 Fifth Avenue, Suite 6910
New York, NY 10118
Telephone: (646) 502-5950
Facsimile: (646) 502-5959

*Attorneys for Responding Party*
*FINISAR CORPORATION*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| FUJIKURA LTD.,<br><br>          Moving Party,<br><br>   v.<br><br>FINISAR CORPORATION,<br><br>          Responding Party. | No. 5:15-mc-80110-JSC<br><br>(In connection with *Finisar Corp. v. Nistica Inc.* (N.D. Cal. Case No. 5:13-cv-03345))<br><br>**FINISAR CORPORATION'S OPPOSITION TO FUJIKURA LTD.'S MOTION TO QUASH (DKT. NO. 1) AND CROSS-MOTION TO COMPEL**<br><br>**REDACTED PUBLIC VERSION OF DOCUMENT SUBJECT TO FINISAR'S MOTION TO SEAL**<br><br>Date: _____<br>Time: 9:00 a.m.<br>Place: San Francisco Courthouse, Courtroom F – 15th Floor<br>Judge: Hon. Jacqueline Scott Corley |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION.................................................................1

I.    INTRODUCTION ..............................................................................1

II.   FACTUAL BACKGROUND .................................................................2

   A.    Fujikura Ltd.'s U.S. Business...........................................................2

     i.  Fujikura Ltd. Is Nistica's Parent Company and Funds, Controls, and Otherwise Enables Nistica to Function................................................................2

     ii. Fujikura America, Inc. ("FAI") Is a Wholly-Owned Subsidiary of Fujikura Ltd. that Acts as Its United States Presence in California. ................................................5

   B.    Fujikura Ltd. Inserts Itself into the Underlying Dispute at the Yamaguchi Deposition.......6

   C.    Finisar First Served the Subpoenas on Fujikura Ltd. on March 6, 2015...........................7

   D.    Finisar Supplemented Service by Serving the Subpoenas on Fujikura Ltd. through Its California Presence, Fujikura America, Inc. ...............................................7

III.  ARGUMENT .................................................................................7

   A.    A Rule 45 Subpoena Is Superfluous; Fujikura Ltd. Must Comply with the Subpoena Requests as Any Party to the Case Under Rules 30 and 34 .........................................8

     i.  Fujikura Ltd. Is an Interested Party that Has a Substantial Interest in the Litigation and Is Playing the Role of a Party. ...................................................8

     ii. Fujikura Ltd. Has Effectively Intervened in the Finisar v. Nistica Litigation. ..................9

   B.    Even If a Subpoena Were Required, Service on Fujikura Ltd. Was Proper. .......................9

     i.  Service on Fujikura Ltd.'s Representative at the Deposition Assured Effective Delivery of the Fujikura Subpoenas and Is Therefore Proper Service...............................10

     ii.    Service on Fujikura Ltd. Through Its Wholly-Owned California Subsidiary Was Proper. ......................................................................................11

     iii.   Finisar Gave Nistica Notice of the Fujikura Subpoenas Before Delivering the Subpoenas to Fujikura Ltd. ...........................................................13

     iv.    Finisar Tendered Fees When It Re-Reserved the Subpoenas.......................................14

   C.    The Subpoenas Comply with the Geographical Limits of Rule 45(c) ............................14

     i.  Fujikura Ltd. Regularly Transacts Business in Person in California With, Through, and As FAI. ...............................................................................14

     ii.    A Person with Relevant Knowledge Need Not Be Present Within 100 Miles................16

     iii.   Physical Documents Do Not Need to Be within 100 Miles to Be Discoverable. ..........17

D.    There is No Violation of International Law Because Finisar Does Not Seek Discovery in Japan ...................................................................................................................18

E.    The Subpoenas Do Not Subject Fujikura Ltd. to Undue Burden ......................................19

i.    Fujikura Ltd. Has Not Met Its Burden to Show the Subpoenas Are Unduly Burdensome. ......................................................................................................................19

ii.    Finisar Cannot Get the Requested Documents from the Parties. ...................................21

iii.    All Requested Documents and Deposition Topics Are Relevant and Reasonably Calculated to Lead to the Discovery of Admissible Evidence. ...............................................21

iv.    Finisar Has Taken Reasonable Steps to Reduce Burden on Fujikura Ltd. .....................22

v.    If Any Narrowing Is Warranted, the Parties Should Meet and Confer Regarding a Mutually Acceptable Scope for the Subpoenas. ....................................................................23

F.    The Court Has Jurisdiction Over Fujikura Ltd. to Order It to Produce Discovery ...........23

G.    Sanctions Are Not Warranted Because Finisar's Actions Were Reasonable ....................25

IV. CONCLUSION ...........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL Telecommunications LLC v. SurplusEQ.com Inc.*,
   2012 WL 2590557 (D. Ariz. July 5, 2012) ...........................................................................6

*Asea, Inc. v. S. Pac. Transp. Co.*,
   669 F.2d 1242 (9th Cir. 1981) ...........................................................................................16

*Chevron Corp. v. Donziger*,
   2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ....................................................................19

*Chevron Corp. v. E-Tech Int'l*,
   2010 WL 3584520 (S.D. Cal. Sept. 10, 2010) .....................................................................11

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
   2012 WL 1980361 (N.D. Cal. June 1, 2012) .......................................................................20

*Falco v. Nissan N. Am. Inc.*,
   987 F. Supp. 2d 1071 (C.D. Cal. 2013) ..............................................................................12

*Finisar v. Nistica*,
   No. 4:13-cv-03345-BLF (Sept. 9, 2013) ...............................................................................2

*Gray v. Mazda Motor of Am., Inc.*,
   560 F. Supp. 2d 928 (C.D. Cal. 2008) .........................................................................12, 18

*Halo Electronics, Inc. v. Bel Fuse Inc.*,
   2010 WL 2605195 (N.D. Cal. June 28, 2010) .........................................................11, 12, 23

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ...........................................................................................24

*In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*,
   168 F.R.D. 535 (D. Md. 1996) ...........................................................................................18

*In re Jee*,
   104 B.R. 289 (Bankr. C.D. Cal. 1989) ...........................................................................8, 18

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*,
   578 F. Supp. 2d 1224 (C.D. Cal. 2008) ..............................................................................12

*Legal Voice v. Stormans Inc.*,
   738 F.3d 1178 (9th Cir. 2013) ...........................................................................................25

*Martin v. D-Wave Sys. Inc.*,
   2009 WL 4572742 (N.D. Cal. Dec. 1, 2009) .......................................................................24

*Miller v. Ghirardelli Chocolate Co.*,
  2013 WL 6774072 (N.D. Cal. Dec. 20, 2013) ........................................................... 14

*Newton v. Nat'l Broad. Co.*,
  726 F.2d 591 (9th Cir. 1984) .................................................................................... 18

*Nikon Corp. v. ASM Lithography B.V.*,
  222 F.R.D. 647 (N.D. Cal. 2004) ................................................................................ 9

*NML Capital Ltd. v. Republic of Argentina*,
  2014 WL 3898021 (D. Nev. Aug. 11, 2014) ......................................................... 7, 16

*Perkins v. Benguet Consolidated Mining Co.*,
  342 U.S. 437 (1952) .................................................................................................. 24

*Realtek Semiconductor Corp. v. LSI Corp.*,
  2014 WL 4365114 (N.D. Cal. Sept. 3, 2014) ............................................................ 19

*Sotelo v. Old Republic Life Ins.*,
  2006 WL 2632563 (N.D. Cal. Sept. 13, 2006) .......................................................... 17

*Terre Haute Warehousing Service, Inc. v. Grinnell Fire Protection*,
  193 F.R.D. 561 (S.D.Ind.1999) ................................................................................ 10

*Tessera, Inc. v. Advanced Micro Devices, Inc., et. al.*,
  Case No. 4:05-cv-04063 (N.D. Cal. Nov. 20, 2012) ................................................. 16

*Yamaha Motor Co. v. Superior Court*,
  94 Cal. Rptr. 3d 494 (Cal. App. 4th 2009) ............................................................... 12

*Wahoo Int'l, Inc. v. Phix Doctor, Inc*
  2014 WL 3573400 (S.D. Cal. July 18, 2014). ..................................................... 13, 17

**Rules/Statutes**

35 U.S.C. § 271(f) ......................................................................................................... 20, 21

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 19

Fed. R. Civ. P. 30 .......................................................................................................... *passim*

Fed. R. Civ. P. 34 ..................................................................................................... 8, 9, 19

Fed. R. Civ. P. 45 .......................................................................................................... *passim*

R. Prof. Cond. 3-500(D) ...................................................................................................... 11

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on _____ at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, in San Francisco, California, Responding Party Finisar Corporation ("Finisar"), by and through its counsel, shall and hereby does move for an order (1) compelling Fujikura Ltd. to produce documents responsive to Finsar's document subpoena (Dkt. 2, Exhibit A) and (2) compelling Fujikura Ltd. to designate one or more Fujikura Ltd. witnesses to testify regarding the topics listed in Finisar's deposition subpoena (Dkt. 2-1, Exhibit B), and (3) any further relief that the Court deems appropriate.

Finisar's Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Robin Davis and exhibits attached thereto, the complete files and records of this action, any oral argument the Court permits, and any further information that my properly be presented to the Court at or before the time this Motion is deemed submitted by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is an admittedly unusual case.  Fujikura Ltd., a Japanese company that regularly transacts business in the United States and effectively controls Defendant Nistica, Inc. ("Nistica"), is attempting to avoid producing discovery in the underlying patent case between Finisar and Nistica.  Fujikura Ltd. asks this Court to ignore Fujikura Ltd.'s U.S. activities, to ignore its control of Nistica, and to ignore Fujikura Ltd.'s affirmative actions to insert itself into this case during the deposition of a Nistica witness.  Indeed, to understand Fujikura Ltd.'s role in the underlying suit, the Court need look no further than Fujikura Ltd.'s Motion to Quash, where Fujikura Ltd. acknowledges that if fees were awarded to Nistica in the underlying patent suit, *Fujikura Ltd.* would reap the benefit.  This is further corroborated by Nistica's CEO who testified that it is ███████████████████████████████████ ███████████   Thus, Fujikura Ltd. has been acting as a party to this suit, and its substantial interest in the litigation should make it subject to discovery by notice.

However, even if subpoenas are deemed necessary, Finisar properly served Fujikura Ltd. with proportionally targeted subpoenas on March 6, 2015 (through attorney David Makman) and then again on April 6, 2015 (through Fujikura Ltd.'s wholly-owned subsidiary, Fujikura America Inc.).  Fujikura Ltd.'s Motion to Quash contains all manner of kitchen sink arguments that attempt to distract from the fact that Fujikura Ltd. regularly conducts business in this judicial district and is subject to this Court's subpoena power.

Through this cross-motion, Finisar seeks the Court's assistance to compel Fujikura Ltd. to comply with its discovery obligations.  Specifically, Finisar requests the Court compel Fujikura Ltd. to produce documents responsive to its document subpoenas, designate one or more witnesses for Rule 30(b)(6) deposition testimony, and command those witnesses' appearance for deposition.  (Dkt. 2, Fujikura Exhibit A; Dkt. 2, Fujikura Exhibit B.)  Through its subpoenas

Finisar seeks documents important to the underlying patent suit that it has been unable to obtain from Defendant Nistica.  For example, Fujikura Ltd. holds necessary documents related to the manufacture of the accused products in Fujikura facilities, including the source of supplies, the costs of manufacture, and the algorithms used to program the products.  These documents go directly to Finisar's infringement, damages, and injunction arguments.  Also, as Nistica's corporate parent with the company's only in-house patent attorney, Fujikura Ltd. has critical documents related to the companies' notice and willful infringement of the patents.

The parties met and conferred concerning this motion telephonically on April 1, 2015.

## II.      FACTUAL BACKGROUND

### A.      Fujikura Ltd.'s U.S. Business

Fujikura Ltd. is a Japanese technology company that transacts business and is otherwise present in the United States through its ownership of and interactions with at least four United States companies: Nistica, America Fujikura Ltd. ("AFL"), Fujikura America, Inc. ("FAI"), and Fujikura Automotive America LLC ("FAA").  Nistica is majority owned by AFL, which is a wholly-owned holding company for Fujikura Ltd.  (Exh. A, Fujikura Global http://www.fujikura.com/globalmap/#americas (last visited April 21, 2015) ("Fujikura Global"); Exh. B, AFL History, http://www.aflglobal.com/Company/Company-Profile/AFL-History.aspx (last visited April 21, 2015); *Finisar v. Nistica*, No. 4:13-cv-03345-BLF, Dkt. 21 (Sept. 9, 2013).; *Finisar v. Nistica*, No. 4:13-cv-03345-BLF, Dkt. 21 (Sept. 9, 2013).)  In addition to AFL, Fujikura Ltd. operates its importation, sales, and marketing operations in the United States through its wholly-owned subsidiaries FAI and FAA.  (Exh. A.)

i.      Fujikura Ltd. Is Nistica's Parent Company and Funds, Controls, and Otherwise Enables Nistica to Function.

Fujikura Ltd. acquired U.S.-based Nistica in 2012.  Ever since the acquisition, Fujikura Ltd. has closely managed Nistica including by appointing board members, planting Fujikura Ltd.

---

employees at Nistica, monitoring Nistica's progress, and providing financial support.

Functionally, Fujikura Ltd. controls Nistica. ███████████████████

████████████████████████████████████████████████

███████████████████████  Because of that arrangement, Fujikura Ltd. was

able to install Takamasa Kato—a Fujikura Ltd. Executive Vice President and board member—as

Chairman of Nistica's Board.  (Exh. D, Nistica Board of Directors, http://nistica.com/board.html

(last visited April 21, 2015).).

Even before the acquisition, Fujikura Ltd. monitored and controlled Nistica by ███████

████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████

████████.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24          As a result, Fujikura Ltd. is funding, supporting, and no

25 doubt controlling Nistica's defense of the underlying patent suit—so much so that Fujikura Ltd.

26 admitted in its Motion to Quash that were Finisar forced to pay fees in the underlying suit,

27 Fujikura Ltd. would reap the benefit.  (Dkt. 1 at 13.)  Indeed, Nistica's CEO recently testified that

28

---

FINISAR'S OPPOSITION AND CROSS-MOTION TO COMPEL      4

1 ██████████████████████████████████████████████████████

    ii. <u>Fujikura America, Inc. ("FAI") Is a Wholly-Owned Subsidiary of Fujikura</u>
<u>Ltd. that Acts as Its United States Presence in California.</u>

   FAI is the California arm of Fujikura Ltd.  It is not, as Fujikura Ltd. suggests, a separate,

independent company that Fujikura Ltd. happens to own.  For example, FAI does not operate its

own website; instead its only online presence indicates that FAI is the Americas

telecommunications sales location of Fujikura Ltd. in Santa Clara, California.  (Exh. A).

   Fujikura Ltd. treats FAI like a branch office.  FAI is a Delaware Corporation, with its

principal place of business is in Santa Clara, California.  (Exh. A.)  But FAI shares its Santa Clara

address with another Fujikura Ltd. U.S. company, Nistica's direct parent, AFL.  (Exh. L, AFL

Locations, http://www.aflglobal.com/Contact/Locations.aspx (last visited on April 21, 2015.)  In

addition to conducting sales and marketing operations from Santa Clara, ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████  (Exh. N Nistica Management Team, http://nistica.com/board.html (last visited on April

15, 2015).)

   Indeed, Fujikura Ltd. appears to treat all of its U.S. subsidiaries like branch offices.   For

example, employees of Fujikura Ltd. entities are often employed for multiple Fujikura entities

simultaneously.  Until recently, Scott (a/k/a Takeaki) Kitajima was both president of FAI and a

managing executive of Fujikura Ltd. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  Similarly, Rob Crowder is the vice president and secretary for

both FAI and FAA, is "involved in strategic and financial activities of several other Fujikura

[Ltd.] group companies," has served as Nistica's CFO since 2013, and has been responsible for

the "overall finance, accounting and information technology" at AFL since 2007.  (Exh. N.)

Thus, the evidence shows that Fujikura Ltd. regularly intertwines its own business with that of its

subsidiaries and its subsidiaries' with each other to maximize the benefits from each company

and localize the risk.  For example, AFL has control over source code in the possession of

Fujikura Ltd., houses two Fujikura Ltd. technicians in its office in South Carolina, and

maintained a close relationship with Fujikura Ltd. during other lawsuits, with Fujikura personnel

providing expertise when needed by AFL.  *See*, *AFL Telecommunications LLC v. SurplusEQ.com*

*Inc.*, No. CV11-1086 PHX DGC, 2012 WL 2590557, at *2 (D. Ariz. July 5, 2012).

### B.    Fujikura Ltd. Inserts Itself into the Underlying Dispute at the Yamaguchi Deposition

On March 5-6, 2015, Finisar deposed Taichi Yamaguchi, a Senior Business Executive at

Nistica and a member of Nistica's Board of Directors whose principal responsibility is to

███████████████████████████████████████████████

███████████████████████████████████████████████

████████    David Makman, counsel for Fujikura Ltd., attended the deposition of Yamaguchi

on March 5 without giving Finisar prior notice of his appearance.  (Davis Decl. at ¶ 3; Exh. E at

7:2-5, Yamaguchi Deposition.)  Makman inserted himself and Fujikura Ltd. into Yamaguchi's

deposition ostensibly to "make privilege objections on behalf of Fujikura" because, according to

Makman, Nistica's counsel could not "make privilege objections on behalf of Fujikura"  (Exh. E

at 54:10-55:12, Yamaguchi Deposition.)  However, Makman did not limit his extensive

objections to Fujikura Ltd.'s privilege, and instead made long and improper speaking objections

related to relevance, hearsay, and speculations that were transparently designed to coach the

witness and to be disruptive to the deposition.   (*See*, *e.g.*, Exh. E at 60:10-62:2, 176:2-178:14,

180:10-182:21, Yamaguchi Deposition.)  Makman also signed onto the Protective Order in this

litigation on behalf of Fujikura Ltd.  (Davis Decl. at ¶ 4.)

### C.     Finisar First Served the Subpoenas on Fujikura Ltd. on March 6, 2015

After Fujikura Ltd. inserted itself into this case through Makman and his actions on March 5, Finisar served two subpoenas (Dkt. 2, Exh. A; Dkt. 2, Exh. B) on Fujikura Ltd. through Makman on March 6, the second day of Yamaguchi's deposition.  Service was made after Finisar gave notice of the subpoenas to Jennifer Bennett, counsel for Nistica, who along with Makman was defending the Yamaguchi Deposition. (Davis Decl. at ¶ 6; Exh. E at 158:22-159:19.) Though Makman stated that he did not have the authority to accept the subpoenas, Makman nevertheless physically took the subpoenas.  (Exh. E at 158:22-159:19.)  Makman clearly delivered the subpoenas to Fujikura Ltd. because on the last day to produce documents Fujikura Ltd., through Makman, served objections to the subpoenas and indicated its refusal to search for or produce any documents, or designate a witness for deposition.  (Dkt. 2, Exhs. C-D.)

### D.     Finisar Supplemented Service by Serving the Subpoenas on Fujikura Ltd. through Its California Presence, Fujikura America, Inc.

The parties met and conferred on their respective motions to quash and compel on April 1.  After that conference, Finisar reissued both subpoenas and served them on Fujikura Ltd. through its California subsidiary FAI on April 6.  (Dkt. 2, Exhibit F; Exh. Q; Exh. R.)  Finisar tendered deposition fees with the April 6 service.

## III.   ARGUMENT

Fujikura Ltd. raises largely procedural objections in its attempt to avoid or delay compliance with the subpoenas.  (Dkt. 1 at 5.)  However, "[t]he Federal Rules of Civil Procedure are applied, neither blindly nor mechanically, but through the court's careful exercise of its broad discretion."  *NML Capital Ltd. v. Republic of Argentina,* No. 2:14-CV-492-RFB-VCF, 2014 WL 3898021, at *11 (D. Nev. Aug. 11, 2014) (citing *Republic of Argentina v. NML Capital, Ltd.*, __ U.S. __, 134 S. Ct. 2250, 2254 (2014)).  Fujikura Ltd.'s objections elevate form over substance and attempt to obscure the reality of how Fujikura Ltd. operates in this district.  The Court should

---

hold that the discovery requests served on Fujikura Ltd. are not subject to the limitations of Rule 45 because Fujikura Ltd. has taken on the role of a party, carries a substantial interest in the litigation, and effectively intervened in the matter. But even if Rule 45 does apply, Finisar has met all of its requirements and thus the Court should enforce the subpoenas.

### A. A Rule 45 Subpoena Is Superfluous; Fujikura Ltd. Must Comply with the Subpoena Requests as Any Party to the Case Under Rules 30 and 34

The Court should enforce the discovery requests in Finisar's subpoenas pursuant to Rules 30 and 34 under one of two alternative theories: (1) Fujikura Ltd. is an interested party with a substantial interest in this litigation and is therefore subject to party discovery; and (2) Fujikura Ltd. has effectively intervened in this case and is subject to discovery as an intervenor.

### i. Fujikura Ltd. Is an Interested Party that Has a Substantial Interest in the Litigation and Is Playing the Role of a Party.

Fujikura Ltd. must produce the requested documents and designate a deponent under Rules 34 and 30 because it is a party to the case by virtue of its substantial interest in the outcome and its behavior in overseeing the litigation. *See supra* Section II.A.ii. Service of a subpoena under Rule 45 is not necessary where the "non-party has a substantial interest in the litigation and is playing the role of a party." *In re Jee*, 104 B.R. 289, 295-96 (Bankr. C.D. Cal. 1989). Fujikura Ltd. has a substantial interest in this case and is playing the role of a party because it funds Nistica and this litigation, and will reap the benefits or burdens of the outcome of this litigation. Indeed, Fujikura Ltd. admits as much in its Motion to Quash, claiming "Fujikura Ltd. will not benefit from the patent suit unless the Court finds that it is frivolous and awards fees." (Dkt. 1 at 13.) Furthermore, Fujikura Ltd.'s articulated view of "benefit" is myopic—Fujikura Ltd. would directly benefit from any finding that allows Fujikura Ltd. to continue to make, use, sell, or offer for sale WSS in the United States or even a finding of infringement accompanied by a reduced damages award █████████████████████████████████████████████

████████████████████████████████████████████████████

1

2

3

4

5              Therefore, the Court should enforce the discovery requests in the

6  subpoenas as discovery requests to a party under Rules 30 and 34.  Once viewed as discovery

7  requests under Rules 30 and 34, all of Fujikura Ltd.'s arguments in its Motion to Quash vanish.

8          ii.    <u>Fujikura Ltd. Has Effectively Intervened in the Finisar v. Nistica</u>
9                 <u>Litigation.</u>

10         Similarly, the Court should enforce the discovery requests in Finisar's subpoenas under

11  Rules 30 and 34 because Fujikura Ltd. has effectively intervened in the underlying patent case

12  (without the Court's approval).  By appearing at the Yamaguchi deposition through Makman,

13  signing on to the protective order, and interposing a host of objections invoking this Court's

14  authority, including speaking objections that were designed to coach the witness, Fujikura Ltd.

15  has inserted itself into this case and effectively intervened without leave of Court.  The Court

16  should not allow Fujikura Ltd. to avail itself of the protections of this Court—through improper

17  objections to testimony elicited by Finisar's counsel and availing itself of the Protective Order—

18  and at the same time avoid the discovery obligations of an intervening party.  An intervenor is

19  subject to the same discovery obligations as other parties, and as such, Fujikura Ltd. should be

20  compelled to produce documents and a deposition under Rules 30 and 40 as an intervenor.  *Nikon*

21  *Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650 (N.D. Cal. 2004) ("[T]here is more ready

22  availability of discovery" from an intervenor than a non-party).

23      **B.    Even If a Subpoena Were Required, Service on Fujikura Ltd. Was Proper.**

24         If the Court finds that a subpoena was required, it should compel Fujikura Ltd. to comply

25  with Finisar's subpoenas because service was proper.  Finisar properly served two sets of

subpoenas with identical requests on Fujikura Ltd.  As described above, Finisar first served the subpoenas on Fujikura Ltd. through its counsel, Makman, on March 6, and then again through Fujikura Ltd.'s subsidiary FAI on April 6.

> i.  Service on Fujikura Ltd.'s Representative at the Deposition Assured Effective Delivery of the Fujikura Subpoenas and Is Therefore Proper Service.

Finisar properly served the subpoenas on Fujikura Ltd. through its attorney, Makman, who appeared on Fujikura Ltd.'s behalf at the Yamaguchi deposition in this judicial district in the same exact lawsuit in which the subpoenas were issued.  (Davis Decl. at ¶¶ 2-7.)  Fujikura Ltd. appeared at the deposition despite not being invited or required in any way to attend, over Finisar's objections on the record.  (Davis Decl. at ¶ 5.)  Makman participated in the preparation of Yamaguchi, objected in a manner to coach Yamaguchi's responses throughout the deposition, and interrupted the proceedings to translate in place of the parties' hired translators.  (*See*, *e.g.*, Exh. E at 7:3-5, 11:1-7, 60:10-62:2, 176:2-178:14, 180:10-182:21, Yamaguchi Deposition.)  For all intents and purposes, Makman appeared as Fujikura Ltd.'s personal representative with authority in connection with this case.  Thus, when Makman was served with the subpoenas, Fujikura Ltd. was personally served.

But, even if service on Makman did not constitute personal service on Fujikura Ltd., as a result of Makman's presence and activity at the deposition, the Court can and should find that service was adequate because delivery to Makman guaranteed service to Fujikura Ltd.  Rule 45 contains no explicit requirement of "personal service," and a growing number of courts, including courts in the Ninth Circuit, find that assured service is effective delivery.  enas served by UPS overnight mail nor the signed and electronically served subsequent subpoenas were sufficient. Although some courts have construed Rule 45 to require personal delivery of a subpoena, *Terre Haute Warehousing Service, Inc. v. Grinnell Fire Protection,* 193 F.R.D. 561, 563 (S.D.Ind.1999), other courts have allowed service by certified mail so long as the court can

be assured that delivery has occurred. *See e.g., Chevron Corp. v. E-Tech Int'l*, No. 10CV1146-IEG WMC, 2010 WL 3584520, at *7 (S.D. Cal. Sept. 10, 2010). Several courts in this Circuit have held that service of a subpoena need not be made in person so long as the method used ensured effective delivery. *Id.* ("[C]ourts have allowed service by certified mail so long as the court can be assured that delivery has occurred."). Here, service on Fujikura Ltd.'s attorney at a deposition in the underlying action where he was representing Fujikura Ltd. ensured effective delivery of the subpoena to Fujikura Ltd.—indeed, Fujikura Ltd. makes no argument that it has failed to receive the subpoena—and is therefore proper service.[1]  Handing the subpoenas to Makman, who would presumably have been expected to report back to Fujikura Ltd. shortly after the conclusion of the deposition, ensured delivery of the subpoenas at least as reliably as UPS overnight mail, if not more so.[2]  Thus, Fujikura Ltd. was properly served through Makman.

ii.     Service on Fujikura Ltd. Through Its Wholly-Owned California Subsidiary Was Proper.

Even if Finisar's service on March 6 is found inadequate, Finisar properly re-served the subpoenas on Fujikura Ltd. through its wholly-owned California subsidiary, FAI, on April 6. Under California law, a foreign corporation may be served through its subsidiary based in California if the subsidiary is the foreign corporation's "general manager in this state." *Halo Electronics, Inc. v. Bel Fuse Inc.*, No. CIV. C-07-06222 RMW, 2010 WL 2605195, at *1 (N.D. Cal. June 28, 2010) (citing Cal. Corp.Code § 2110). A "general manager" need not be an

---

[1] Fujikura Ltd. instead argues that it took ten days to communicate the substance of the subpoena and negotiate representation relating to the subpoenas, at least in part because of the language and time zone. The Court should view this argument with skepticism, especially in view of Makman's self-described Japanese fluency. (Dkt. 1 at 8; Dkt. 2 at ¶ 2.)

[2] Fujikura Ltd. seems to imply that an attorney with a limited purpose would not have access to his own client and would not be obligated to communicate the events of the deposition, including the service of the subpoena.  (Dkt. 1 at 8:3.)  But Makman was obligated to report back to Fujikura Ltd. after the deposition. Calif. R. Prof. Cond. 3-500(D) ("A member shall keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed.").

---

individual person and "include[s] [ ] any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'"   *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928, 930 (C.D. Cal. 2008) (authorizing service of process through Mazda-America on behalf of Mazda-Japan).   A subsidiary may constitute a corporation's general manager where it offers the same benefits as if the parent "had opened its own offices or hired its own agents in California."   *Halo Electronics, Inc.*, 2010 WL 2605195, at *1-2 (finding the ties of a parent and a wholly-owned California subsidiary significant).   There is no reason that this law should not apply similarly to service of a subpoena on the California-based general manager of a foreign corporation.

FAI is the California general manager for Fujikura Ltd.   FAI's only source of revenue is in the import, sale, and service of Fujikura Ltd. products.   (Exh. A.)   FAI does not control its own web presence and even its email domain "@fujikura.com" is identical to its parent company's English language web address "www.fujikura.com."   (Exh. A; Exh. P.)   Also, the apparent president of FAI at the time of the first service of the subpoenas has been a managing executive of Fujikura Ltd., as stated on Fujikura Ltd.'s website.   (Exh. P; Exh. U.)   He has utilized both a FAI email (scott@fujikura.com) and a Fujikura Ltd. email (kitajima@fujikura.co.jp).   (*See id.*). Fujikura Ltd. attempts to distinguish between a branch office and a subsidiary, arguing that it is "entitled to the legal benefits of having a subsidiary as opposed to a branch office."   (Dkt. 1 at 3.) However, Fujikura Ltd. does not cite any authority for distinguishing a subsidiary from a branch office for this purpose.   Indeed, *Mazda* and a line of California cases held that service on a Japanese parent is effective through service on its California subsidiary.   *Gray*, 560 F. Supp. 2d at 930; *see also Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071, 1075-76 (C.D. Cal. 2013); *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227-28 (C.D. Cal. 2008); *Yamaha Motor Co. v. Superior Court*, 94 Cal. Rptr. 3d 494, 501 (Cal. App. 4th 2009).

iii.  Finisar Gave Nistica Notice of the Fujikura Subpoenas Before Delivering the Subpoenas to Fujikura Ltd.

The Yamaguchi deposition transcript makes clear that Finisar gave notice of the subpoenas to Nistica—by handing them to Jennifer Bennett, counsel for Nistica—before delivery to Fujikura Ltd. through Makman.  (Exh. E at 158:22-159:2, Yamaguchi Deposition.)  Fujikura Ltd. argues that this form of notice is insufficient.  Not so.  The Advisory Committee Note to the 2013 Amendment for Rule 45(a) notes that prior notice allows the other party (here Fujikura Ltd.'s subsidiary, Nistica) to object or serve a subpoena for additional materials.  But neither Rule 45 nor the Committee Note delineate the amount of time necessary for notice before service.  Nistica was made aware of the subpoena through its counsel and was afforded the opportunity to object and/or serve additional requests before the deadline for Fujikura Ltd to comply with Finisar's subpoenas.  Moreover, in this case, Nistica and Fujikura Ltd. acted together from the moment notice was given to Nistica.  Fujikura Ltd. included Nistica on all correspondence and teleconferences concerning the subpoenas and conferred separately with Nistica regarding Fujikura Ltd.'s positions.  (Davis Decl. ¶ 9.)  Therefore, Fujikura Ltd. and Nistica cannot claim that Nistica was not afforded the protections of Rule 45(a)(4).

More importantly, courts in the Ninth Circuit have found that simultaneous notice and service satisfies the "prior notice" requirement of Rule 45, especially when the subpoenas were re-served.  *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13CV1395-GPC BLM, 2014 WL 3573400, at *3 (S.D. Cal. July 18, 2014) (citing *Florida Media, Inc. v. World Publications, LLC*, 236 F.R.D. 693, 695 (M.D. Fla. 2006)).  ("Even if *Wahoo*'s position that concurrent notice is sufficient is unconvincing, *Wahoo* is clear that subsequent reissue of a subpoena would suffice.").  As in *Wahoo*, Finisar re-served the subpoenas with identical production and deposition requests on Fujikura Ltd. on April 6, 2015.  Nistica has been on notice since March 6, 2015, when it received notice of the first issued set of subpoenas.  (Exh. Q; Exh. R; Exh. E at 158:22-24,

Yamaguchi Deposition.)  Moreover, Finisar gave Nistica a separate prior notice of the re-serving of the subpoenas through the Fujikura Ltd.'s California subsidiary.  (Exh. X; Exh. Y.)

In any event, courts in this District have refused to quash subpoenas on this basis, especially where, as here, there is extensive briefing on the merits of the subpoena.  *Miller v. Ghirardelli Chocolate Co.*, No. C 12-4936 LB, 2013 WL 6774072, at *5 (N.D. Cal. Dec. 20, 2013) (finding deficient notice, but refusing to quash on this basis).  Thus, this Court should similarly refuse to quash on this basis.  For the above reasons, quashing Finisar's subpoenas based on the notice requirement where Nistica's counsel received notice in person at a deposition moments before Fujikura Ltd. was served and where Finisar later re-issued the subpoenas and provided Nistica another prior notice of that service would be unwarranted.

### iv.  Finisar Tendered Fees When It Re-Reserved the Subpoenas.

Fujikura Ltd. objects to Finisar's deposition subpoena because Finisar did not tender the deposition fee in connection with the first deposition subpoena.  Of course, if the Court holds that Fujikura Ltd. is subject to party discovery under Rules 34 and 30, this argument is moot.  (*See supra* Section III.A.)  In the interest of avoiding a debate on this formality, Finisar subsequently re-served the subpoena, with the requisite fee.  (Dkt. 2, Fujikura Exh. F; Exh. R.)  Fujikura Ltd. does not dispute this.  As such, service of the second subpoena moots the question of whether fees were properly tendered in the first instance.

### C.  The Subpoenas Comply with the Geographical Limits of Rule 45(c)

#### i.  Fujikura Ltd. Regularly Transacts Business in Person in California With, Through, and As FAI.

Rule 45 authorizes a party to command compliance with a subpoena within 100 miles of where the subpoenaed party "regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  Finisar's subpoenas meet this requirement because Fujikura Ltd. regularly transacts business in person within 100 miles of the place of compliance through its subsidiary FAI.  (Exh. A.; *see*

*supra* Section II.A.i.)  FAI, located in Santa Clara, is the California sales arm of Fujikura Ltd. for electronic components, telecommunications, and power utility products.  (Exh. A)  FAI does not conduct any independent business apart from selling or servicing Fujikura Ltd. products.  (Exh. A) ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  FAI shares executives with other Fujikura Ltd. entities, including Fujikura Ltd. itself.  For example, Scott (a/k/a Takeaki) Kitajima, the president of FAI at the time the subpoenas were first served, has been simultaneously holding a managing executive position at Fujikura Ltd.  (Exh. U; Exh. P.)  Likewise, Rob Crowder functions as the vice president and secretary for both FAI and FAA, while also holding the positions of CFO of Nistica and CFO and secretary of AFL, and being involved in the "strategic and financial activities of several other Fujikura group companies."  (Exh. N.)  Furthermore, FAI does not function outside of the control of Fujikura Ltd. and does not have independent products or web presence.  Thus, Fujikura Ltd. transacts business in the Northern District of California in Santa Clara through FAI.

But the Court need not actually find that Fujikura Ltd. transacts business through FAI in order to find that Finisar complied with the 100-mile rule because Fujikura Ltd. clearly regularly transacts business in Santa Clara ***with*** FAI (as well as its other subsidiary, AFL, which shares offices with FAI in Santa Clara).  (Exh. L.)  Critically, the carefully-crafted declaration of Satoru Ogawa that Fujikura Ltd. submitted in support of Fujikura Ltd.'s motion for a protective order did not deny that Fujikura Ltd. regularly transacts business in California, nor does it deny that Fujikura Ltd. stations employees in its California subsidiary.  (Dkt. 3.)  The fact that Fujikura Ltd. employees and executives, such as Kitajima, routinely serve as employees and officers of FAI (including as president) for a period of years, is sufficient to find that Fujikura Ltd., regularly transacts business in Santa Clara, at the very least with its subsidiary FAI.  Thus, Fujikura Ltd. should be compelled to produce a witness within 100 miles of its Santa Clara office.

ii.     A Person with Relevant Knowledge Need Not Be Present Within 100 Miles.

The fact that Fujikura Ltd. claims not to employ a person within 100 miles of the place of compliance with relevant knowledge of the 30(b)(6) topics, does not affect Fujikura Ltd.'s obligations to provide testimony.  If no such person exists within 100 miles, Fujikura Ltd. must educate one of its own employees from Santa Clara to testify on Fujikura Ltd.'s behalf.  *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-CV-492-RFB-VCF, 2014 WL 3898021, at *10 (D. Nev. Aug. 11, 2014) ("The unique status of the corporate person permits a federal court to compel a non-party resident corporation to designate a nonresident employee to 'thoroughly educate' an in-forum employee to testify on the corporation's behalf.").  Finisar's subpoena seeks a Rule 30(b)(6) deposition of Fujikura Ltd.  (Dkt. 2.)  Thus, Ogawa's assertion that there "are no Fujikura [Ltd.] employees in the State of California that have knowledge of the information called for in the deposition subpoena" does not relieve Fujikura Ltd. of its duty to designate a Fujikura Ltd. representative who either knows the information or can be taught the relevant information.  If Fujikura Ltd. finds it less burdensome to designate a Fujikura Ltd. employee currently in Japan on one of their regular business visits to the United States, Finisar would gladly accept this or any other prepared Rule 30(b)(6) witness.  However, the deponent does not need to be a person with knowledge, but may be taught the relevant facts—there is no intention or need to compel a specific person's testimony from or in Japan.  FED. R. CIV. P. 30(b)(6).

Finally, if the Court finds that Fujikura Ltd.'s only place of business is in Japan, the Court has broad discretion to direct the place of a Rule 45 deposition, including ordering that it occur overseas, and should exercise it here.  *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981) (directing deposition of non-party witness in Sweden).  If Fujikura Ltd. is willing to consent to a deposition in Japan, the Court can and should enter an order for that deposition.  *See, e.g.*, *Tessera, Inc. v. Advanced Micro Devices, Inc., et. al.*, Case No. 4:05-cv-04063, Dkt. 1106

---

(N.D. Cal. Nov. 20, 2012).

     iii.    Physical Documents Do Not Need to Be within 100 Miles to Be Discoverable.

With respect to the document subpoena, the fact that Fujikura Ltd. has offices around the world that house responsive documents does not insulate it from the obligation to produce responsive documents from foreign locations so long as it transacts business within 100 miles of the place of compliance.  Rule 45(d)(2)(A) makes it clear that "[a] person commanded to produced documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for deposition, hearing, or trial."  In practice, "the 100 mile limit . . . applies to travel by a subpoenaed person, but a person commanded to produce documents need not appear in person at the place of production or inspection."  *Wahoo*, 2014 WL 3573400, at *4 (internal citations and quotations omitted).  Indeed, it is settled precedent in the Ninth Circuit that documents do not need to be in the jurisdiction to be within a subpoena's reach.  *See, e.g.*, *Sotelo v. Old Republic Life Ins.*, No. C-05-02238 RS, 2006 WL 2632563, at *2 (N.D. Cal. Sept. 13, 2006) ("A corporate entity with multiple offices generally must produce all responsive documents regardless of where the documents are physically located.  To treat each office as if it had control only of the documents at that location would be unworkable.").  Since Fujikura Ltd. regularly transacts business in Santa Clara, as demonstrated above, it must produce documents responsive to the subpoena regardless of the physical location of that document.  This is particularly true where most, if not all, documents are electronic or can be scanned to be electronic, and then can be sent anywhere in the world without any burden or travel whatsoever.

Fujikura Ltd. cites a long list of cases contrary to this proposition, but only two of the cases cited arguably support its argument.  (Dkt. 1 at 10.)  Unfortunately, both cases—*McAuslin v. Grinnell Corp.* and *Cates v. LTV Aerospace Corp.*—form part of the line of cases in the Fifth

Circuit that the Ninth Circuit has explicitly rejected (including Fujikura Ltd.'s cited *Cates* case).

*See Newton v. Nat'l Broad. Co.*, 726 F.2d 591, 593 (9th Cir. 1984) ("We do not adopt the rule of

*Carr* and *Cates* because the reasoning and authority offered to support it are unpersuasive.").

Similarly, the court in *In re Jee*, 104 B.R. 289 (Bankr. C.D. Cal. 1989), rejected *Cates* finding

that "[t]he fact that the documents are located in a country where their discovery would be illegal

does not mean that a United States court is without the authority to compel the production of

subpoenaed documents." *Id.* at 295.  Therefore, it is clear Finisar did not violate the 100 mile

limit under Rule 45 and Fujikura Ltd. must be compelled to produce all responsive documents

regardless of their location.

### D. There is No Violation of International Law Because Finisar Does Not Seek Discovery in Japan

Contrary to Fujikura Ltd.'s rhetoric, by requesting a deposition in the United States of

Fujikura Ltd., Finisar has not violated, nor attempted to violate, international law or Japan's

sovereignty, principally because Finisar's requests do not seek a deposition on Japanese soil.  *In*

*re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 538 (D. Md. 1996)

(holding that compelling the depositions of Honda Japan managing agents and Japanese nationals

in the United States does not infringe on Japanese judicial sovereignty).  Moreover, with respect

to service, international law does not apply here because Fujikura Ltd. was served in California.

*Mazda*, 560 F. Supp. 2d at 930 (quoting *Volkswagenwerk,* 486 U.S. at 700) ("The Hague

Convention applies only '[i]f the internal law of the forum state [i.e. California] defines the

applicable method of serving process as requiring the transmittal of documents abroad.'"); *see*

*also supra* Section III.B.ii.  As discussed above, California law does not require that the service

of the subpoena on a foreign entity be necessarily effected by transmittal of the subpoena outside

of the United States.  Fujikura Ltd. disingenuously suggests that Finisar could have complied

with international law by obtaining discovery by letters rogatory.  (Dkt. 1 at 13.)  But, as Fujikura

Ltd. acknowledges, letters rogatory only permit the taking of voluntary discovery in Japan and Fujikura Ltd. has not so volunteered.

### E. The Subpoenas Do Not Subject Fujikura Ltd. to Undue Burden

The subpoenas will not subject Fujikura Ltd. to undue burden. "It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)." *Realtek Semiconductor Corp. v. LSI Corp.*, No. 5:14MC80197BLFPSG, 2014 WL 4365114, at *1 (N.D. Cal. Sept. 3, 2014) (internal citations omitted). Specifically, the Advisory Committee Note to the 1970 amendments of Rule 45(d)(1) "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules." Therefore, Rule 26(b) authorizes parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FRCP 26(b)(1). A "court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Realtek Semiconductor Corp.*, 2014 WL 4365114, at *1 (internal citations omitted).

Finisar seeks relevant documents and information that can only be produced by Fujikura Ltd., including documents Finisar sought but was unable to obtain directly from Nistica (Dkt. 2, Exhibit A; Dkt. 2, Exhibit B). Fujikura Ltd.'s counsel's bald speculation that it could take "months" to respond to the subpoenas, without more, does not satisfy its burden to show that the subpoenas are unduly burdensome. (Dkt. 1 at 12.) Therefore, the Court should find the subpoenas are not unduly burdensome and grant Finisar's motion to compel.

### i. Fujikura Ltd. Has Not Met Its Burden to Show the Subpoenas Are Unduly Burdensome.

"On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3)." *Chevron Corp. v. Donziger*, No. 12-MC-80237 CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013). Fujikura Ltd. has presented nothing more than "mere

speculation and attorney argument," which fails to satisfy its burden.  *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-CV-080082-LHK PSG, 2012 WL 1980361, at *3 (N.D. Cal. June 1, 2012).  As discussed below, Fujikura Ltd. has made a litany of complaints about the scope of Finisar's subpoena (all baseless), but none of those complaints satisfy Fujikura Ltd.'s obligations to show undue burden.

Fujikura Ltd. accuses Finisar of "overly broad definitions" and cites as an example that Finisar requests information on a "wide range of products—not just the products that are actually at issue in this action."  (Dkt. 1 at 14.)  But the subpoenas are expressly limited to relevant technology.  (Dkt. 2 at ¶¶ 15-17, Fujikura Exhibit A, Definitions in Exhibit A to document subpoena).  Nearly every product Nistica has made and sold is accused of infringement in the underlying action.  Thus, documents relevant to those products are relevant to this action.  Fujikura Ltd. also complains about requests relating to worldwide sales of the accused products (Dkt. 1 at 14.), but that information is relevant to Finisar's claim under 35 U.S.C. § 271(f), which encompasses foreign sales of accused products whose components were supplied from or in the United States to Fujikura Ltd. (the foreign manufacturer of the accused products) by Nistica and others.  Fujikura Ltd. further complains that Finisar's definition of Fujikura Ltd. encompasses affiliate companies.  (Dkt. 1 at 15.)  Of course, Finisar cannot possibly know which Fujikura Ltd. entities have the responsive information.  That information lies with Fujikura Ltd.  Finisar's definition is sensibly broad (not unduly so) to prevent Fujikura Ltd. avoiding discovery because Finisar might not know precisely which corporate entity has the requested information.

Fujikura Ltd. accuses Finisar of requesting privileged information.  To the contrary, Finisar specifically asked for a privilege log of withheld material.  (Dkt. 2 at 17-18, Instruction No. 5.)  Indeed, all of the categories of documents that Fujikura Ltd. identifies as examples of Finisar seeking privileged information pertain to centrally relevant issues in the case such as damages (Dkt. 2 at 19-20, Request Nos. 11, 12, 13); notice of the patents by Nistica (Dkt. 2 at 18-

19, Request Nos. 1-3); and evidence of the intimate involvement of Fujikura Ltd. in the underlying litigation (Dkt. 2 at 7, Request No. 1).

### ii.   Finisar Cannot Get the Requested Documents from the Parties.

Fujikura Ltd. also complains that Finisar is requesting information that is available from the parties of the litigation.  In general, Finisar has not sought and is not interested in receiving documents that it has otherwise obtained or that are obtainable from Nistica.  Given Fujikura Ltd.'s active role and oversight of many of Nistica's day-to-day decisions, it is expected to be a likely a source—and in some cases a sole source—of relevant information concerning the accused products.  Most importantly, if Fujikura Ltd. were interested in complying with the subpoenas, Finisar would be willing to confer with Fujikura Ltd. (and Nistica, especially given Nistica's active involvement in Fujikura Ltd.'s response to the subpoenas) to address any concerns it has about documents and information that is obtainable from Nistica and that Finisar has not yet received.  But Finisar has not been afforded that opportunity because of Fujikura Ltd.'s categorical unwillingness to comply at all.

### iii.   All Requested Documents and Deposition Topics Are Relevant and Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

The requested Fujikura Ltd. documents are likely to reveal relevant information related to key issues in the underlying litigation, including notice of the patents, willful infringement, direct infringement, indirect infringement, liability, and damages.  Fujikura Ltd. is a manufacturer, supplier, facilitator, buyer, and distributor of the accused infringing products.  Thus, the requested information relates to the issue of infringement under 35 U.S.C. § 271(f) for the manufacture of infringing products abroad using parts supplied or caused to be supplied in or from the United States, including from Nistica.  (*See*, *e.g.*, Dkt. 2, Exhibit A (Request Nos. 6-9, 15-18, 23-24).)  The requested information is also highly relevant to notice and willfulness.  For example, Fujikura Ltd. specifically objects to Finisar's request for documents regarding the

patents-in-suit, but this limited set of documents reflecting six patents is not at all burdensome and is extremely likely to yield relevant information because the request is very specific and unlikely to yield unresponsive documents.  (Dkt. 2 at 8-9, Exhibit C; Dkt. 2 at 9-10, Exhibit D; Dkt. 2, Exhibit A (Request No. 2).)  The requested information is also highly relevant to damages.  For example, documents produced by Nistica in this case concerning the distribution chain of the accused products identify Fujikura Ltd. as a customer of the accused products.  (Exh. V).  However, Fujikura Ltd. is not an end user of the accused products.  Therefore, Finisar is entitled to discovery regarding how those products are ultimately used and/or disposed of, including, for example, whether Fujikura Ltd. may reimport the accused products into the United States.  (*See*, *e.g.*, Dkt. 2, Exhibit A (Request Nos. 6-9, 15-19, 23-24, 26-27, 29, 31-34).)

### iv.     Finisar Has Taken Reasonable Steps to Reduce Burden on Fujikura Ltd.

Fujikura Ltd. claims it is unduly burdened because Finisar has not taken reasonable steps to reduce its burden.[3]  But Finisar has limited its requests so as to reduce any supposed burden to Fujikura Ltd.  For example, Finisar has limited its requests for deposition testimony from Fujikura Ltd. by issuing a single Rule 30(b)(6) subpoena to which Fujikura Ltd. is entitled to designate a single deponent or set of deponents.  Furthermore, Finisar has complied with international and domestic law in the issuance of the subpoenas.  The number and scope of the topics is reasonable when viewed from the vantage point of Fujikura Ltd.'s involvement in the design, marketing, and sale of the accused products and its oversight and control of Nistica.  (*See generally* Exh. E; Exh. V.)  Thus, to the extent any burden remains, it is a result of the nature of the case and the nature of Fujikura Ltd.'s relationship to the case, and is therefore not undue.

---

[3] Fujikura Ltd. also confusingly argues Finisar should have served these subpoenas years ago; however, Finisar was careful to serve the subpoenas after being reasonably sure of the scope of the issues in the case where discovery from Fujikura is necessary, rather than rushing to subpoena Fujikura Ltd. in the first instance as Fujikura Ltd. seems to advocate.  (Dkt. 1 at 13.)

v.     If Any Narrowing Is Warranted, the Parties Should Meet and Confer
Regarding a Mutually Acceptable Scope for the Subpoenas.

Fujikura Ltd. has refused to produce any documents or witnesses in response to the subpoena topics.  (Dkt. 2-2 at 8.)  As a result, there has been no meaningful opportunity for the parties to discuss Fujikura Ltd.'s allegations of burden and as discussed above, Fujikura has failed to make a showing of any burden.  Thus, the Court should grant Finisar's motion to compel in its entirety.  However, if the Court believes narrowing the scope of Finisar's requests is warranted, the Court should order Fujikura Ltd. to confer with Finisar in good faith regarding scope rather than quash or modify the subpoenas on the basis of undue burden, and also order Fujikura Ltd. to comply with the subpoenas within the discovery period in this case.

**F.     The Court Has Jurisdiction Over Fujikura Ltd. to Order It to Produce Discovery**

The Court has the power to order Fujikura Ltd. to comply with the subpoenas because Fujikura Ltd. is subject to this Court's jurisdiction.  As an initial matter, Fujikura Ltd. subjected itself to the jurisdiction of this Court when it introduced itself into this case uninvited as a result of sending its attorney to appear on the record at a deposition and to sign the protective order.

But more broadly, Fujikura Ltd. is subject to the jurisdiction of this Court through the usual general jurisdiction principles.  Normally, "[d]ue process is satisfied when the defendant has minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Halo Electronics, Inc. v. Bel Fuse Inc.*, No. CIV. C-07-06222 RMW, 2010 WL 2605195, at *4 (N.D. Cal. June 28, 2010) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotations omitted).  "Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation."  *Helicopteros Nacionales*, 466 U.S. at 414 (internal citations omitted).

Fujikura Ltd. is subject to the Court's general jurisdiction because its contacts in California "are so substantial, continuous, and systematic that [Fujikura Ltd.] can be deemed to be 'present.'" *Martin v. D-Wave Sys. Inc.*, No. C-09-03602 RMW, 2009 WL 4572742, at *3 (N.D. Cal. Dec. 1, 2009) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'antisemitisme,* 433 F.3d 1199, 1205 (9th Cir.2006)) (finding general jurisdiction including because executives traveled to California and conduct company business there); *see also See Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 447-49 (1952) (upholding finding of general jurisdiction where the president of a Phillippines-based corporation maintained an office in the forum state, had bank accounts in the forum state, and held several directors' meetings in the forum state). As described above, Fujikura Ltd. purposefully directs its products and business to California by working with FAI to import and sell those products in the United States. ███████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████

Moreover, this Court has jurisdiction over Fujikura Ltd. because of the activities of FAI. Specifically, "a subsidiary's contacts may be imputed to the parent . . . where the subsidiary acts as the general agent of the parent." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). A subsidiary is the agent of the parent where the "subsidiary represents the parent corporation by performing services sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the [parent] corporation… would undertake to perform substantially similar services." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134-35 (9th Cir. 2003) (internal citations and quotations omitted). Under this test, it is immaterial whether the entity is incorporated or otherwise set apart by some other legal mechanism. As described above, Fujikura Ltd.'s wholly-owned subsidiary FAI is in the business of importing, selling, and servicing Fujikura Ltd.'s "electronic

components, telecommunications, and power utility products." (Exh. A.), and Fujikura Ltd. has placed high-level Fujikura Ltd. executives in FAI to control, monitor, and report on FAI.

### G. Sanctions Are Not Warranted Because Finisar's Actions Were Reasonable

Fujikura Ltd.'s request for sanctions is frivolous because Finisar served proper subpoenas. But even if the Court were to quash the subpoenas, Finisar should not be punished for seeking discovery from Fujikura Ltd., a parent company that is so involved in the underlying matter that it will benefit if Nisitca is awarded fees in the case. (Dkt. 1 at 13.) Fujikura Ltd. does not cite a single case in support of its position that sanctions should be awarded at all, let alone on the facts of this case. (Dkt. 1 at 17-20) Finisar's alleged failure to take reasonable steps to reduce burden, especially coupled with Fujikura Ltd.'s unwillingness to engage in discussion regarding a reasonable scope for discovery from Fujikura Ltd., does not give rise to sanctions. Indeed, the only case cited by Fujikra Ltd. denied sanctions based on undue burden commenting that, "overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

Finally, Fujikura Ltd. accuses Finisar of pursuing the subpoenas "in bad faith, for an improper purpose, or in a manner inconsistent with existing law," (Dkt. 1 at 20), but Fujikura Ltd. has made no showing of bad faith or improper purpose. Nor can Fujikura Ltd. do so because the subpoenas do have a legitimate basis, as demonstrated. Indeed, the Ninth Circuit acknowledges that, "losing a motion to compel does not expose a party to sanctions." *Legal Voice*, 738 F.3d at 1185.

### IV. CONCLUSION

For the foregoing reasons, Finisar respectfully requests that the Court enter an order granting Finisar's Cross-Motion to Compel and denying Fujikura Ltd.'s Motion to Quash (Dkt. No. 1), and any further relief that the Court deems appropriate.

Dated:   April 21, 2015                          Respectfully Submitted,

1

/s/ Christopher J. Cox

2

Christopher J. Cox (151650)
chris.cox@weil.com

3

WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway

4

Redwood Shores, CA 94065
Telephone: (650) 802-3029

5

Facsimile: (650) 802-3100

6

7

DAVID C. RADULESCU (*Of Counsel*)
Email: david@radulescullp.com

8

TIGRAN VARDANIAN (*Of Counsel*)
Email: tigran@radulescullp.com

9

ROBIN M. DAVIS (*Of Counsel*)
Email: robin@radulescullp.com

10

RADULESCU LLP
136 Madison Avenue, 6th Floor

11

New York, NY 10016
Telephone: (646) 502-5950

12

Facsimile: (646) 502-5959

13

14

**Attorneys for Responding Party**
**FINISAR CORPORATION**

15

16

17

18

19

20

21

22

23

24

25

26

27

28