UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FUJIKURA LTD.,

    Plaintiff,

v.

FINISAR CORPORATION,

    Defendant.

Case No. 15-mc-80110-HRL   (JSC)
(In connection with *Finisar Corp. v. Nistica Inc.*, No. 5:13-cv-03345)

**ORDER GRANTING MOTION TO QUASH AND DENYING MOTION TO COMPEL**

Re: Dkt. Nos. 1, 9, 10, 19, 24

This dispute relates to two subpoenas that Defendant Finisar Corporation ("Finisar") issued pursuant to a patent infringement action pending in this District, *Finisar Corporation v. Nistica Inc.*, No. 5:13-cv-03345-BLF. Presently before the Court is the motion of non-party Fujikura Ltd. ("Fujikura") to quash the subpoenas, and Finisar's cross-motion to compel Fujikura's compliance with the subpoenas. (Dkt. Nos. 1, 10.) Finisar and Fujikura have also filed administrative motions to file under seal. (Dkt. No. 9, 19, 24.) The Court finds the motions suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' submissions, the Court GRANTS Fujikura's motion to quash and DENIES Finisar's motion to compel. In addition, as discussed in more detail below, the Court reserves ruling on the parties' administrative motions to file under seal at this time.

## BACKGROUND

**A.    Relationship between Fujikura Entities and Nistica**

Integral to resolving the instant motion is the relationship among the parties and non-party involved in this dispute.[1] Fujikura is a Japanese company with its place of business in Tokyo,

---

[1] The following facts are taken from the parties' briefing as well as a number of exhibits attached thereto. Fujikura has filed objections to a number of exhibits that Finisar submitted. (*See* Dkt.

Japan. Fujikura is not registered to do business in California and has no offices in the state. According to the General Manager of Fujikura's Fiber Optics Components Division, the company does not make, use, sell, offer to sell or import any of the products that are accused of infringement in the patent infringement lawsuit to U.S. customers.

Fujikura has a number of wholly-owned U.S. subsidiaries, including America Fujikura Ltd. ("America Fujikura"). Since 2012, America Fujikura has owned a majority interest in Nistica, the defendant in Finisar's patent infringement action. At some points, employees of Nistica have communicated and reported to Fujikura. For example, Taichi Yamaguchi, a former Fujikura employee, now works at Nistica. For a time, his principal role at Nistica was to report to Fujikura. There is some debate over Fujikura's involvement in the manufacture and sales of Nistica's products accused of patent infringement. Yamaguchi testified that Fujikura did not manufacture Nistica's accused products; however, once Fujikura acquired Nistica, it established a formal division, the Optical Network Device Product Department, responsible for collaborating with Nistica on optical devices. With respect to finances, Fujikura's wholly-owned U.S. subsidiary America Fujikura funds Nistica. In addition, Nistica's CEO testified at his deposition that, as Nistica's parent company, Fujikura is footing the bill for defending Nistica in the patent infringement action that Finisar brought.

Another Fujikura subsidiary, Fujikura America, Inc. ("FAI") is a Delaware corporation with its principal place of business in Santa Clara, California. FAI shares its California office space with America Fujikura.

**B. Procedural History**

Finisar initiated a patent infringement action against Nistica, Inc. ("Nistica") in July 2013.[2] Fact discovery closes on May 30, 2015, and the expert discovery deadline is August 24, 2015.

---

No. 19-3.) The Court has taken the objections under advisement, but declines to address the merits of each objection, in part because it reaches a resolution of this matter without delving into the details of these documents as Finisar attempts.

[2] The underlying patent infringement action was referred to the undersigned magistrate judge for the purposes of discovery. (*See Finisar v. Nistica*, No. 5:13-cv-3345-BLF, Dkt. No. 58 (Jan. 24, 2014).)

During the course of discovery, Nistica inadvertently produced—then clawed back—certain privileged Fujikura documents. (Dkt. No. 2 ¶ 4.) Finisar noticed the deposition of Nistica employee and former Fujikura employee Taichi Yamaguchi for March 5 and 6, 2015. Due to potential conflicts regarding Fujikura's privileged or confidential information that Yamaguchi, as a former Fujikura employee, might disclose in his testimony, counsel for Nistica arranged for separate counsel to appear at Yamaguchi's deposition to protect Fujikura's privilege and rights. (*Id.* ¶¶ 4-5.) Fujikura therefore retained David Alan Makman for the purposes of the Yamaguchi deposition. (*Id.* ¶ 4.)

On March 5, 2015—the second day of Yamaguchi's deposition—Finisar gave Makman two subpoenas directed at Fujikura seeking production of documents by March 27, 2015, designating witnesses for Rule 30(b)(6) testimony, and commanding those witnesses' appearance at deposition in April 3, 2015. (Dkt. No. 2-1.) Immediately before serving Makman—in the same breath, it appears—Finisar gave notice of the subpoenas to Nistica's counsel. (Dkt. No. 10-2 ¶ 6; *see also* Dkt. No. 9-7 at 25.) Makman stated that he was not authorized to accept service on Fujikura's behalf, but took the physical copies of the subpoenas and agreed to table the objection to service until after the deposition. (*See* Dkt. No. 9-7 at 25.) On March 20, 2015, Fujikura served objections to the subpoenas. (Dkt. Nos. 2-2, 2-3.) In early April, Finisar also sent a copy of the subpoenas—still directed at Fujikura—to FAI and notified Nistica of intent to re-serve the document subpoenas. (*See* Dkt. Nos. 10-5, 10-6, 10-7.)

Fujikura and Finisar met and conferred regarding the subpoenas on April 1, 2015, but did not reach a resolution. Fujikura filed the instant motion to quash on April 7, 2015. (Dkt. No. 1.) Finisar responded and cross-moved to compel on April 21, 2015. (Dkt. No. 9.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Parties may seek discovery within the scope of Rule 26(b) by depositing a witness pursuant to Rule 30 or serving requests for production of documents pursuant to Rule 34.

Rule 45, in turn, governs discovery of nonparties by subpoena. The scope of discovery

that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). A court must quash or modify a subpoena that

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(3)(A). The geographical limits specified in Rule 45(c) provide that a party may subpoena a person to attend a deposition only within 100 miles of where the person resides, is employed, or regularly transacts business. Fed. R. Civ. P. 45(c)(2). For other discovery besides depositions, a subpoena may command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2).

"On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. 12-MC-80237, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (internal citation omitted); *see also Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 14-MC-80095, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.").

On a motion to compel compliance with a Rule 45 subpoena, the Local Rules in this District require a party to "detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." N.D. Cal. Civ. L.R. 37-2. The court has discretion to determine whether to grant a motion to compel. *See Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519

(9th Cir. 1987). At bottom, the court is vested with broad discretion to manage discovery. *Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012).

## DISCUSSION

**A.      Motion to Quash and Motion to Compel**

Fujikura contends that Finisar's subpoenas must be quashed because they (1) were improperly served; (2) violate the geographical limits of Rule 45; (3) are contrary to Japanese law; and (4) subject Fujikura to undue burden. Fujikura also seeks sanctions against Finisar due to its failure to comply with Rule 45's requirements. Finisar, for its part, argues that Rule 45 does not apply at all because Fujikura is either an interested party or intervenor obligated to respond to discovery requests pursuant to Rules 30 and 34 or, in the alternative, that the subpoenas comply with Rule 45 and therefore the Court should compel Fujikura's compliance.

1.      A Rule 45 Subpoena is Required

With respect to Fujikura as "interested party," in *In re Jee*, 104 B.R. 289 (C.D. Cal. 1989), the court noted that "[s]everal courts have concluded that a non-party could be compelled to comply with discovery requests made pursuant to Rule 34 where the non-party has a substantial interest in the litigation and is playing the role of a party." *Id.* at 295-96 (citations omitted). But Finisar's own conduct in this case belies its argument: it served Fujikura with a non-party subpoena because Fujikura is a non-party. Thus, the Court declines to order Fujikura to comply with the subpoenas as if they were discovery requests pursuant to Rules 30 and 34.

Nor is Fujikura obligated to comply with discovery obligations as an intervenor. Rule 24 governs intervention. *See* Fed. R. Civ. P. 24. The rule provides for either mandatory or permissive intervention under certain circumstances, but both types require a timely motion. Fed. R. Civ. P. 24(a), (b). Once a party has intervened, it is subject to discovery obligations under Rules 30 and 34 just like a party; thus, "there is more ready availability of discovery" from an intervenor than a non-party. *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650 (N.D. Cal. 2004). But there has been no motion to intervene or any court order finding that Fujikura must or may intervene in the underlying patent infringement action. Finisar insists that Fujikura has nonetheless effectively intervened without seeking leave of court by appearing at the

Yamaguchi deposition, signing the protective order, and making objections, but Finisar cites no caselaw that indicates that a party is deemed an intervenor under such circumstances. To the contrary, these actions are par for the course for non-parties whose interests are at play in litigation. Thus, the Court declines to construe Fujikura as an intervenor and subject it to discovery obligations absent a Rule 45 subpoena on that basis. In short, a Rule 45 subpoena is required.

### 2. The Court will Quash the Subpoenas

#### a. *Procedural Defects*

##### i. Proper Notice to Nistica

Fujikura first argues that the subpoenas should be quashed as procedurally defective because Finisar failed to give Nistica pre-service notice. Rule 45 requires that a subpoena calling for the production of documents be served on each party before it is served on the third party. Fed. R. Civ. P. 45(a)(4). Finisar responds that it gave notice to Nistica by handing a copy of the subpoenas to Nistica's counsel shortly before providing a separate copy to counsel for Fujikura at the Yamaguchi deposition, and therefore complied with Rule 45. (Dkt. No. 9-34 at 19; *see also* Dkt. No. 10-2 ¶ 6 (counsel for Finisar attesting that she "first served notice of the subpoena to Nistica's counsel, Jennifer Barrett and then served Fujikura Ltd's counsel, Mr. Makman.").) Not so. Nonetheless, this failure is not a basis for quashing the subpoena.

The Advisory Committee note to the 2013 amendment for Rule 45 explains that the point of prior notice is to allow the opposing party an opportunity to object or to serve a subpoena for additional materials. Some courts have quashed subpoenas for failure to provide adequate notice. *See, e.g.*, *Carillo v. B&J Andrews Enters.*, No. 2:11-cv-01450-MMD-CWH, 2013 WL 310365, at *2 (Jan. 24, 2013) (D. Nev. Jan. 24, 2013). However, "when opposing counsel have notice and sufficient time to object, they are not prejudiced by a violation of Rule 45 notice requirement." *Vondersaar v. Starbucks Corp.*, No. C 13-80061 SI, 2013 WL 191546, at *2 (N.D. Cal. May 8, 2013) (citation omitted). In the absence of prejudice, courts in this District have declined to quash a subpoena on this basis "especially given the extensive briefing and this order on the merits" of the subpoena. *Miller v. Ghirardelli Choc. Co.*, No. C 12-4936, 2013 WL 6774072, at *5 (N.D.

Cal. Dec. 20, 2013); *Vondersaar*, 2013 WL 191546, at *2 (declining to quash subpoenas where notice was not given until 3 days after service because defendant suffered no prejudice because it independently learned of the subpoenas soon after they were issued); *see also Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667-68 (D. Kan. 1998) (finding that plaintiff's receipt of notice allowing them 10 days to object to the subpoena was sufficient), *on reconsid.*, 1998 WL 919126 (D. Kan. Nov. 6, 1998), *aff'd sub nom. Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163 (10th Cir. 2003).

Here, Nistica has suffered no prejudice from any technical violation of Rule 45(b)(1). Nistica received notice of the subpoenas concurrently with Finisar's first attempt at service—in any event, before the subpoenas' existence was communicated to Fujikura. The deadlines for production were not until three weeks after Nistica received notice, so Nistica had sufficient time to object; indeed, Nistica appears to have worked with Fujikura on objections and actively participated in meet-and-confers regarding the subpoenas with Fujikura and Finisar. Moreover, the subpoenas were re-served, and Nistica surely had adequate advance notice from those subpoenas. The subpoenas were improper and could be quashed on this basis, but the Court declines to quash the subpoena solely on the grounds that it violated Rule 45(b)(1)'s prior notice requirement.

      ii.  Tender of Fees

Fujikura also contends that the 30(b)(6) deposition subpoena must be quashed because Finisar did not initially tender fees. Rule 45(b) states that "if the subpoena requires [a] person's attendance," upon service of the subpoena the serving party must "tender[ ] the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b). "A failure to tender fees at the time of service invalidates the subpoena and the deposition testimony will not be compelled." *Wallis v. Centennial Ins. Co.*, No. 2:08-cv-2558 WBS AC, 2013 WL 434441, at *4 (E.D. Cal. Feb. 1, 2013) (quashing deposition subpoena where plaintiff failed to tender requisite witness fees until after service (citation omitted); *see also CF & I Steel Corp v. Mitsui & Co.*, 713 F.2d 494, 495 (9th Cir. 1983) (finding tender of fees 34 days after service and one week after notice of deficiency could not cure defect); *Mirana v. Battery TaiShing Corp.*, No. C 08-80142 MISC. JF

7

(RS), 2009 WL 290459, at *1 (N.D. Cal. Feb. 5, 2009) (quashing subpoena for failure to tender witness fees upon service); *S.F. Bay Area Rapid Transit Dist. v. Spencer*, No. C 04-04632 SI, 2006 WL 2734284, at *1 (N.D. Cal. Sept. 25, 2006) (quashing subpoena for failure to tender witness fees without prejudice to re-service). The first subpoena for 30(b)(6) deposition is therefore quashed on this basis. Finisar did, however, tender the required witness fees upon service of the deposition subpoena on FAI. (*See* Dkt. No. 2-5; Dkt. No. 10-20.) The Court therefore declines to quash the later-served deposition subpoena solely on this basis.

### iii. Failure to Make Personal Service

However, the Court concludes that the subpoenas should be quashed for insufficient service—especially combined with the other procedural defects identified above. Rule 45(b)(1) provides, in relevant part, that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person[.]" The majority of courts understand "delivering" to require personal service of the subpoena. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2015 WL 848554, at *4 (N.D. Cal. Jan. 28, 2015) (citation omitted); *Spencer*, 2006 WL 2734284, at *1 (citations omitted); *Newell v. Cnty. of San Diego*, No. 12cv1696-GPC (BLM), 2013 WL 4774767, at *2 (S.D. Cal. Sept. 5, 2013) (citations omitted); *see also* Wright & Miller, 9A Fed. Practice & Proc. § 2454 (3d ed. 2015) ("The longstanding interpretation of Rule 45 has been that personal service of the subpoena is required.").[3] Thus, "contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness . . . [and] "unlike service of most litigation papers after the summons and complaint, service on a person's lawyer will not suffice." Wright & Miller, *supra*, § 2454 (collecting cases).

There appears to be a growing—although still minority—trend among courts to allow

---

[3] As discussed in more detail below, there appears to be a split as to whether Rule 45(b)(1) requires personal in-hand delivery of a subpoena or whether another method, such as mail delivery, suffices as long as it gives the person served fair notice and an opportunity to object or file a motion to quash. *See, e.g.*, *Hall v. Sullivan,* 229 F.R.D. 501, 503–06 (D. Md. 2005)(collecting cases and discussing in depth the majority and minority interpretations of the meaning of "service" under Rule 45); *Green v. Baca*, No. CV 02-204744, 2005 WL 283361, at *1 n.1 (C.D. Cal. Jan. 31, 2005).

substitute service of a Rule 45 subpoena, such as mail delivery, so long as the method of service is reasonably calculated to provide timely, fair notice and an opportunity to object or file a motion to quash.  *See id.*; *see, e.g.*, *Toni Brattin & Co. v. Mosaic Int'l, LLC*, No. 15-mc-80090-MEJ, 2015 WL 1844056, at *4 (N.D. Cal. Apr. 9, 2015) (granting motion to serve Rule 45 subpoenas by certified mail); *Green v. Baca*, No. CV 02-204744, 2005 WL 283361, at *1 n.1 (C.D. Cal. Jan. 31, 2005) (same (collecting cases)).  To that end, "[c]ourts have permitted parties to serve Rule 45 subpoenas by alternative methods of service[,]" in particular, service by mail.  *Toni Brattin & Co.*, 2015 WL 1844056, at *3 (citations omitted).  Courts are more inclined to grant such alternative service where the serving party has provided sufficient evidence of its earlier diligence in attempting to effectuate personal service.  *Id.* (collecting cases); *see, e.g.*, *id.* (authorizing service by mail where the serving party made earlier attempts to make personal service, failed, and sought in advance leave of court to serve by alternative service).

Here, Finisar attempted to serve the first subpoenas on Makman, the attorney representing Fujikura for the purposes of asserting privilege at the Yamaguchi deposition.  But courts have long held that service on an attorney is not sufficient to compel production of documents or presence at a deposition.  *See, e.g.*, *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99-cv-9623(RWS), 2006 WL 1311967, at *1 (S.D.N.Y. May 12, 2006); *Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) (collecting cases).  That Finisar sought to serve Fujikura through Makman in the first instance belies any claim that Finisar was diligent in attempting to effectuate personal service first.  *Cf. Toni Brattin & Co.*, 2015 WL 1844056, at *3.  Thus, the scope of Makman's representation is irrelevant: even if he had been representing Fujikura for all purposes, he would not be a sufficient conduit for service of a Rule 45 subpoena on the company.  Indeed, in its reply Finisar all but abandons its argument that service on Makman was proper, focusing instead of service on Fujikura's local, wholly-owned subsidiary, FAI.

In any event, the Court need not stake out a position on the debate on substitute service, because even if service by mail were an appropriate substitute here, service by mail on FAI is insufficient, because "service on a subsidiary does not affect service on a parent."  *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008) (citing *Gravely*

9

*Motor Plow & Cultivator Co. v. H.V. Carter Co., Inc.*, 193 F.2d 158, 161 (9th Cir. 1951)).

Finisar's argument to the contrary—that service of a Rule 45 subpoena on a foreign corporation's "general manager" is sufficient—is unpersuasive. As Finisar points out, California law does provide that a summons and complaint may be served on a foreign corporation through its local subsidiary if the subsidiary is the foreign corporation's "general manager in this state." *Halo Elecs., Inc. v. Bel Fuse, Inc.*, No. C-07-06222 RMW, 2010 WL 2605195, at *1 (N.D. Cal. June 28, 2010); *see also, e.g.*, *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928, 930 (C.D. Cal. 2008) (authorizing service of process through Mazda-America for Mazda-Japan). A subsidiary may constitute the foreign corporation's "general manager" where it offers such benefits to the foreign corporation such that it were as if the parent "had opened its own offices or hired its own agents in California." *Halo Elecs., Inc.*, 2010 WL 2605195, at *1-2; *see also Gray*, 560 F. Supp. 2d at 930 (noting that any individual or agent of a corporation may constitute the "general manager" where he is "of sufficient character and rank to make it reasonable certain that the defendant would be apprised of the service made" (citation omitted)). Courts have found in-state companies to be a foreign corporation's general manager for the purposes of service where the companies were affiliated and the local entity was "the intended outlet for [the foreign company's] product[,]" or where the in-state company was the "exclusive sales agent" in the state. *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008).

But these cases do not compel the conclusion that service of the subpoena on FAI is sufficient to serve Fujikura. First, both the state statute and all of these cases pertain to service of the initial complaint and summons, *see* Cal. Civ. Code § 416.10 (in chapter on "Service of Summons"); *see, e.g.*, *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071, 1075-76 (C.D. Cal. 2013); *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928, 930 (C.D. Cal. 2008); *Khachatryan*, 578 F. Supp. 2d at 1227; *Yamaha Motor Co., Ltd. v. Sup. Ct.*, 174 Cal. App. 4th 264, 267 (2009)—not a Rule 45 subpoena, which has service requirements that courts have construed more narrowly as discussed above. While Finisar insists that the rule also applies to service of subpoenas, but it does not cite a single case that held as much, and the Court has found none.

10

In its reply, Finisar calls "absurd" Fujikura's reliance on *Briarpatch* for the proposition that "notice" alone is insufficient to effect service of a subpoena. (Dkt. No. 24-4 at 12-13.) Finisar insists that *Briarpatch* in fact held that under the circumstances presented in that case, "it was inappropriate to serve a subpoena" on a particular individual instead of the non-party itself and that "[p]resumably, had the court been reasonably assured that the non-party would have been timely notified of the subpoena, it would have deemed the service effective." (*Id.* at 12 (citing *Briarpatch*, 2006 WL 1311967, at *3).) But Finisar at best misunderstands and at worst misrepresents the *Briarpatch* decision, which concluded that Rule 45 requires personal service and that substitute service would not suffice. 2006 WL 1311967, at *2. The court noted that "[a]ssuming arguendo that the minority reasoning [allowing substitute service] were persuasive"—*i.e.*, contrary to fact, because the court did not find it to be persuasive—then service on the business manager was not sufficient because it was not "reasonably calculated to provide timely notice to the third party witness." *Id.* at *3. Thus, the court determined that *if* substitute service *were* allowed, which it is not, then such "alternative service" would only be sufficient if it was reasonably calculated to provide timely notice. Thus, Finisar's insistence that *Briarpatch* means that notice is enough for a complaint and therefore must be enough for a subpoena is wrong.

Given that Rule 45 subpoenas are not sufficiently served whenever there is mere notice to the third party witness, service here was improper. The Court need not determine whether FAI is actually Fujikura's "general manager" for the purposes of service of a complaint because, even if it is, service by mail—*i.e.*, substitute service in lieu of personal delivery—is generally not permitted to serve a Rule 45 subpoena. This is especially true given that this case does not involve service by certified mail after diligent attempts at personal delivery, but rather one improper method of service on the heels of an even more improper method of service. *Cf. Toni Brattin & Co.*, 2015 WL 1844056, at *3. Accordingly, Finisar's improper service on FAI is reason enough to quash the subpoenas.

    b.  *Failure to Comply with International Treaty*

There is a separate reason to quash Finisar's subpoenas: its attempt to seek discovery from a Japanese company merely by serving a Rule 45 subpoena on a California subsidiary is in direct

11

contravention of the evidentiary treaty between the United States and Japan—specifically, Article 17 of the U.S.-Japan Bilateral Consular Convention of 1963.[4] *See* International Judicial Assistance: Japan, *http://travel.state.gov/content/travel/english/legal-considerations/judicial/country/japan.html*, *last visited* May 8, 2015. Article 17(1)(f) of the Treaty provides that a consular officer may "obtain copies of or extracts from documents of public registry," but not other documents, such as those in the hands of the third party. Thus, a party is obligated to proceed through consular officials to obtain documentary discovery. A party also has available to it the option of sending a letter rogatory pursuant to the court's inherent authority to do so. *See Asis Internet Servs. v. Optin Global, Inc.*, No. C-05-05124-JCS, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007) ("A court is inherently vested with authority to issue letters rogatory." (citing *United States v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958)); *see also* 28 U.S.C. § 1781(a)(2) (implicitly providing federal courts with authority to issue letters rogatory). In addition, Article 17(e)(ii) of the U.S.-Japan Consular Convention governs depositions and provides that a consular officer may "take depositions, on behalf of the courts or other judicial tribunals or authorities of the sending state," if the deposition is "voluntarily given." *See also* Fed. R. Civ. P. 28(b) (noting that a deposition may be taken in a foreign country "under an applicable treaty or convention" or "under a letter of request[,]" i.e., letter rogatory). Finisar cannot skirt these rules merely by serving a subsidiary of a foreign parent corporation on U.S. soil. If that were the case, the U.S.-Japan Consular Convention (and the Hague Convention, for countries that are signatories thereto) would be entirely toothless for a large number of global companies with U.S. subsidiaries.

    3.    <u>Fujikura's Request for Sanctions</u>

Finally, Fujikura asks the Court to impose sanctions against Finisar on the grounds that

---

[4] Though Japan is a party to the Hague Service Convention and therefore disputes over proper service of process (i.e., a complaint and summons) are subject to the Hague Convention, *See* 737 U.N.T.S. 410 n. 1 (Ratification of Japan to the Hague Convention); *see, e.g.*, *Fireman's Fund*, 2005 WL 628034, at *2, Japan is not a signatory to the Hague Evidence Convention, Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555. *See U.S.O. Corp. v. Mizuho Holding Co.*, No. 06 C - 459, 2007 WL 2893628, at *3 (N.D. Ill. Sept. 27, 2007) (citations omitted).

12

Finisar's subpoenas "have no legitimate basis" and because Finisar could have sought the same discovery through letters rogatory. Rule 45(d)(1) provides that the court "must . . . impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney" who fails "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Fed. R. Civ. P. 45(d)(1); *see also Legal Voice v. Stormans, Inc.*, 738 F.3d 1178 (9th Cir. 2013). Rule 45(d)(1) is discretionary. *Legal Voice*, 738 F.3d at 1185. "Merely losing a motion to compel does not expose a party to Rule 45 sanctions." *Id.* (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425-27 (9th Cir. 2012)). The language of the rule anticipates sanctions when a subpoena is overbroad or subjects a non-party to undue burden; however, the Ninth Circuit has interpreted the rule to justify sanctions "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice*, 738 F.3d at 1185 (citations omitted); *see also Mount Hope Church*, 705 F.3d at 428; *Mattel Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 814 (9th Cir. 2003). Bad faith is not required, but is sufficient for sanctions. *Mount Hope Church*, 705 F.3d at 428. As for sanctions for subpoenas served "in a manner inconsistent with existing law," "courts have found that parties fail to comply with existing law when they do not follow the subpoena procedures in Rule 45," such as failure to notify opposing counsel of the subpoenas or requesting information that is wholly irrelevant under any legal theory. *Mount Hope Church*, 705 F.3d at 428 (citation omitted). Whatever the basis, in determining whether sanctions are appropriate, the Ninth Circuit instructs courts to put "more emphasis on the recipient's burden than on the issuer's motives." *Id.* at 428-29.

Here, the information Finisar sought in the subpoenas is relevant to the underlying patent infringement lawsuit. Thus, it cannot be said that Finisar issued the subpoenas for an improper purpose. The Court also takes Finisar at its word that it did not issue the subpoenas in bad faith. On the other hand, Finisar's attempt to sidestep the well-settled requirements of Rule 45 and international law weighs in favor of sanctions as it issued the subpoenas "in a manner inconsistent with existing law." *Legal Voice*, 738 F.3d at 1185 (citations omitted); *see also Mount Hope Church*, 705 F.3d at 428. But courts have interpreted Rule 45(d)(1) sanctions as applying

13

primarily to reimburse a non-party's costs incurred in *complying* with a subpoena, not merely litigating a motion to quash. *See Mount Hope Church*, 705 F.3d at 427 ("Our only Rule 45[ ] sanction-specific case interprets 'undue burden' as the burden associated with compliance. . . . The burdens of complying with the subpoena are the ones that count." (citation omitted)); *see also Mattel, Inc.*, 353 F.3d at 813-14. Here, Fujikura has not represented that it took any steps towards compliance with the instant subpoenas—such as beginning document collection with an eye towards eventual production. The Court declines Fujikura's invitation to award Rule 45 sanctions to reimburse its expenses associated with litigating the instant motion to quash. Accordingly, the Court DENIES Fujikura's request for sanctions.

**B.     Administrative Motions to File Under Seal**

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. [Federal Rule of Civil Procedure] 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). Sealing is appropriate only where the requesting party "establishes that the document, or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law." N.D. Cal. Civ. L.R. 79-5(a). A party may meet this burden by showing that the information sought to be withheld creates a risk of significant competitive injury and particularized harm. *See Phillips v. Gen Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2006). A party may also meet this burden by establishing that the information contains trade secrets that create a risk of significant competitive injury and particularized harm, *see Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161-62 (9th Cir. 2011) (citation omitted), or where disclosure of the information would violate a party's legitimate privacy interest that similarly leads to such risk, *see, e.g.*, *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-2581 JF (HRL), 2010 WL 3221859, at *5 (N.D. Cal. Aug. 13, 2010). Whatever the grounds, a party must "narrowly tailor" its request to sealable material only. *Id.*

1.     <u>Finisar's Administrative Motion to File Under Seal (Dkt. No. 9)</u>

Finisar's first motion seeks to seal portions of its cross-motion to compel as well as 15 of the exhibits to the declaration of Robin Davis accompanying the cross-motion.[5] A majority of these exhibits are internal company records that Nistica produced to Finisar, which Nistica designated as Confidential—Attorneys' Eyes Only ("AEO") pursuant to the Stipulated Protective Order because they include information about proprietary product, supplier, and customer information about products accused on infringement. (*See* Dkt. 10-2 ¶¶ 2, 4-13, 15-16.) The Court has already determined that this type of information is properly sealable. (*See* Dkt. No. 204.) Exhibits E and T are portions of the Yamaguchi and Ashish Vengsarkar[6] depositions, which Nistica also marked Confidential-AEO as it contains discussions of confidential product information. (*Id.* ¶¶ 3, 14.)

The redacted portions of Finisar's motion to compel refer to, quote from, or otherwise disclose the contents of the aforementioned exhibits that Nistica marked AEO. (*Id.* ¶ 17.) The Court's review confirms that Finisar properly limited these redactions solely to portions of its motion that refer to the contents of documents that Nistica marked AEO in the underlying patent litigation.

The present record presents no basis for the Court to make a determination about whether the documents that Nistica marked as confidential, are, in fact, properly sealable. Under Rule 79-5(d), when a party files an administrative motion to seal a document designated as confidential by another party, the designating party has five days to file a declaration establishing that the

---

[5] Specifically, Finisar seeks to seal Exhibits C (Nistica Shareholder Agreement), E (excerpts of Yamaguchi Deposition Transcript), F (internal Nistica email regarding status of accused product), G (internal Nistica email discussing business and naming customer), H (email regarding request for quotation from a third-party customer), I (internal Nistica email in Japanese with attachment discussing response to third-party customer RFQ), J (Nistica internal presentation regarding manufacturing capability for a particular client), K (Nistica internal financial statements,), M (email between Yamaguchi and Nistica CEO discussing Fujikura executive visit to FAI's California office and client meetings), O (Notice of Action from the U.S. Department of Homeland Security regarding FAI and Fujikura), P (Fujikura financial spreadsheet), S (internal Nistica email and attached presentation regarding product and client information), V (Nistica's customer shipment list), and W (itinerary of Fujikura U.S. business trip listing client names and personal contact information. (*See* Dkt. No. 9 at 3.)

[6] Vengsarkar is a Nistica executive.

information is sealable. The rule further provides that the documents will be made part of the public record if the designating party does not provide the declaration as required. N.D. Cal. Civ. L.R. 79-5(d). Here, of course, Finisar filed under seal documents that Nistica designated as highly confidential in the underlying patent litigation—not in this miscellaneous case addressing the motion to quash. Accordingly, the Court orders Nistica to submit a Local Rule 79-5 declaration setting forth the confidential basis for each document that Finisar seeks to file under seal.

### 2. Fujikura's Administrative Motion to File Under Seal (Dkt. No. 19)

Fujikura's motion seeks to seal portions of its objections to evidence that Finisar submitted in connection with its motion to compel. The portions sought to be sealed reference documents that have been filed under seal by Finisar because Nistica marked the documents as Highly Confidential—AEO pursuant to the Protective Order. The Court concludes that this constitutes good cause to seal the portions of Fujikura's objections if the underlying exhibits are actually sealable, which—as discussed above—remains to be seen. *See Phillips*, 307 F.3d at 1206. As set forth above, the Court cannot determine the propriety of sealing the underlying Exhibits until Nistica files a declaration.

### 3. Finisar's Administrative Motion to File Under Seal (Dkt. No. 24)

Finisar's second administrative motion seeks to seal portions of its reply and 7 exhibits submitted in support thereof. Exhibit 2 is portions of the deposition of Joanne Bisconti, which Nistica marked as Confidential-AEO pursuant to the Protective Order governing the underlying patent litigation. Exhibits 3 through 7 are internal company records and emails that Nistica produced to Finisar "presumably" because they include proprietary product, supplier, financial, customer information concerning Nistica's products and its business. (Dkt. No. 24 at 4.) Exhibit 8 is Finisar's Patent L.R. 3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions in the underlying patent litigation. The Court has repeatedly determined in the underlying litigation that this document is properly sealable in its entirety as it includes confidential, proprietary information about Finisar's products. However, the Court has no basis on which to assess whether Exhibits 2 through 7 are properly sealable absent a Rule 79-5 declaration from Nistica.

**CONCLUSION**

"The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004). Finisar did not meet this responsibility here given the myriad ways in which it failed to comply with the strictures of Rule 45. For the reasons described above, the Court GRANTS Fujikura's motion to quash the subpoenas and DENIES Finisar's motion to compel Fujikura's compliance therewith. The Court also DENIES Fujikura's request for sanctions.

The Court withholds ruling on the parties' administrative motions to file under seal. Nistica shall file, within five days of this Order, a declaration consistent with Local Rule 79-5(d) setting forth the confidential basis of the Exhibits that Finisar seeks to file under seal in this matter.

The Court files this Order under seal because various matters referenced herein have been filed under seal in this matter. However, the Court is not persuaded that the entirety of this Order is confidential or properly sealable. Accordingly, on or before May 28, 2015, Fujikura and Nistica shall jointly file a statement setting forth which portions of this Order they contend must be filed under seal with citations to the facts and law supporting their position for each and every proposed redaction. The parties shall file their statement on the public docket. Failure to file such a statement will result in unsealing of this Order in its entirety.

This Order disposes of Docket Nos. 1 and 10.

**IT IS SO ORDERED.**

Dated: May 14, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge